**UNITED STATES of America**

v.

**Edward D. D'ALO.**

**Crim. No. 79–59.**

United States District Court,
D. Rhode Island.

March 20, 1980.

Edwin J. Gale, Esq., Spec. Atty., U. S. Dept. of Justice, Providence, R. I., for plaintiff.

Thomas DiLuglio, Johnston, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

The defendant and one Mark D'Alo were jointly charged with manufacturing counterfeit slugs, in violation of 18 U.S.C. § 491(b), and with a conspiracy to commit the same offense, in violation of 18 U.S.C. § 371. On August 7, 1979 this Court granted a motion to suppress all the materials seized by the police on February 2, 1978 at the D'Alo Tool Co. as to this defendant and denied it as to Mark D'Alo. The pertinent evidence seized was slugs and materials for making slugs.[1]

---

1. *INFORMATION*

The United States Attorney charges that:
### COUNT I
On or about April 15, 1977, in the District of Rhode Island, Edward D. D'Alo, the Defendant, did sell slugs similar in size and shape to a lawful coin of the United States, that is, a twenty-five-cent piece, with knowledge and reason to believe that such slugs were intended to be used unlawfully and fraudulently to procure something of value, that is, the use and enjoyment of property and services from automatic merchandise vending machines, coin-box telephones and fare boxes designed to receive and to be operated by lawful coins of the United States.

All in violation of Title 18, United States Code, Section 491(b) and 2.

The United States Attorney further charges that:
### COUNT II
On or about December 15, 1977, in the District of Rhode Island, Edward D. D'Alo, the Defendant, did sell slugs similar in size and shape to a lawful coin of the United States, that is, a twenty-five-cent piece, with knowledge and reason to believe that such slugs were intended to be used unlawfully and fraudulently to procure something of value, that is, the use and enjoyment of property and services from automatic merchandise vending machines, coin-box telephones and fare boxes designed to receive

and to be operated by lawful coins of the United States.

All in violation of Title 18, United States Code, Section 491(b) and 2.

The United States Attorney further charges that:
### COUNT III
From on or about April 8, 1977 and continuing thereafter until on or about January 17, 1978, in the District of Rhode Island, Edward D. D'Alo, the Defendant, and others, known and unknown, willfully and knowingly did combine, conspire, confederate and agree with each other to violate Title 18, United States Code, Section 491(b), that is, to knowingly manufacture, sell, offer for sale and keep with intent to sell, slugs similar in size and shape to a lawful coin of the United States, that is, a twenty-five-cent piece.

It was a part of said conspiracy that Edward D. D'Alo and Robin D'Alo would receive metal from Chase Metals Service, Inc. to be used in the manufacture of slugs. It was a further part of the conspiracy that Edward D. D'Alo and Mark S. D'Alo would make slugs from that metal. It was a further part of the conspiracy that Edward D. D'Alo would sell, offer for sale, and keep with intent to sell, slugs to, among others, Robert Oliva.
### Overt Acts
In furtherance of the conspiracy and to effect the objects thereof, the following overt acts were performed:

1. On or about April 8, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

2. On or about April 15, 1977 in the District of Rhode Island, Edward D. D'Alo sold slugs to Robert Oliva.

3. On or about May 13, 1977 in the District of Rhode Island, Robin D'Alo received a quantity of metal from Chase Metals Service, Inc.

4. On or about May 20, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

5. On or about August 24, 1977 in the District of Rhode Island, Robin D'Alo received a quantity of metal from Chase Metals Service, Inc.

6. On or about September 23, 1977 in the District of Rhode Island, Robin D'Alo received a quantity of metal from Chase Metals Service, Inc.

7. On or about October 5, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

8. On or about November 3, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

9. On or about November 16, 1977 in the District of Rhode Island, Robin D'Alo received a quantity of metal from Chase Metals Service, Inc.

10. On or about November 30, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

11. On or about December 15, 1977 in the District of Rhode Island, Edward D. D'Alo sold slugs to Robert Oliva.

12. On or about January 4, 1978 in the District of Rhode Island, Robin D'Alo received a quantity of metal from Chase Metals Service, Inc.

13. On or about January 6, 1978 in the District of Rhode Island, Robin D'Alo received a quantity of metal from Chase Metals Service, Inc.

14. On or about January 17, 1978 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

All in violation of Title 18, United States Code, Section 371.

### INDICTMENT

The Grand Jury charges that:

### COUNT I

On or about February 2, 1978 in the District of Rhode Island, EDWARD DONALD D'ALO and MARK S. D'ALO, the Defendants, did manufacture slugs similar in size and shape to a lawful coin of the United States, that is, a twenty-five-cent piece, with knowledge and reason to believe that such slugs were intended to be used unlawfully and fraudulently to procure something of value, that is, the use or enjoyment of property or services from automatic merchandise vending machines, coin-box telephone, fare boxes and parking meters designed to receive and to be operated by lawful coins of the United States.

All in violation of Title 18, United States Code, Sections 491(b) and 2.

The Grand Jury further charges that:

### COUNT II

From on or about April 8, 1977 and continuing thereafter until on or about February 2, 1978 in the District of Rhode Island, Edward D. D'Alo and Mark S. D'Alo, the Defendants herein, wilfully and knowingly did combine, conspire, and agree with each other and with diverse other persons to the Grand Jury unknown, to violate Title 18, United States Code, Section 491(b), that is, to knowingly manufacture slugs similar in size and shape to a lawful coin of the United States, that is, a twenty-five-cent piece.

### Overt Acts

In furtherance of the conspiracy and to effect the objects thereof, the following overt acts were performed:

1. On or about April 8, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

2. On or about May 13, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

3. On or about May 20, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

4. On or about August 24, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

5. On or about September 23, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

6. On or about October 5, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

7. On or about November 3, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

8. On or about November 16, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

9. On or about November 30, 1977 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

10. On or about January 4, 1978 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

11. On or about January 6, 1978 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

Mark D'Alo appealed the Court's suppression order and the government elected to proceed with the trial of Edward D'Alo. This trial was aborted by the Court in granting the defendant's motion for a mistrial. The government dismissed the indictment and has now filed a superseding information charging this defendant in two counts with selling and in one count with conspiring to "manufacture, sell, offer for sale, and keep with intent to sell." The defendant now contends that a new trial would subject him to double jeopardy in violation of the Fifth Amendment to the United States Constitution, because the mistrial was the product of prosecutorial over-reaching; in substance he argues that the government intentionally attempted prosecution with inadmissible and damaging irrelevant evidence. This contention requires a review of the events leading to the mistrial.

The government introduced evidence proving that from April 1977 to January 1978 substantial quantities of brass stripping coil were sold and delivered to the D'Alo Tool Company which is owned by the defendant. A member of the Rhode Island State Police testified that on February 2, 1978 he entered the tool shop and saw the defendant in his office and Mark D'Alo "working at one of the pieces of equipment." A paid government informant, Robert Oliva, testified that he had previously associated with the defendant and on a number of occasions visited him at the D'Alo Tool Company where he saw brass stripping coils, stacked boxes into which slugs were packed, and presses stamping out the slugs. He said that Edward D'Alo was actually operating one of these presses. Oliva's testimony thus described the very materials seized by the police and subsequently suppressed by the Court. Finally, he further stated that over a period of five months he purchased slugs from Edward D'Alo.

During the examination of Oliva there were many side bar conferences discussing the admissibility of all this evidence. The conduct of the trial so concerned this Court that it felt constrained to call an in-chambers conference. At this meeting I pointed out it was apparent that defense counsel was engaged in his first jury trial; that certain prejudicial evidence, which the Court felt may have been inadmissible, had been presented to the jury in violation of the holding in *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977); and that the government's total reliance on Oliva's testimony alone appeared to fall far short of proving a conspiracy to manufacture slugs. I stated to counsel that at most the testimony showed a conspiracy to sell counterfeit slugs (to Oliva) and not to manufacture, whereas the indictment charged a conspiracy together with Mark D'Alo to manufacture; that even if the government felt it could prove the indicted conspiracy, it failed to establish the existence of the unlawful agreement in the absence of the jury as required by *Petrozziello, supra*; that the evidence already introduced was too damaging to be cured by any instructions to the jury. I further questioned establishing a corpus delicti with only Oliva's oral testimony, and the admissibility of evidence describing the materials seen by Oliva at the D'Alo Tool Company which had been the subject of the suppression motion. I add that neither defense counsel nor the prosecution had thought of these issues—indeed the prosecutor conceded this and stated,

You have raised some issues which we had not considered and I will have to consider whether we would in fact want to press this matter. I don't know. The thing that is important is whether he [defense counsel] files a motion for mistrial and whether we will press the case. We might dismiss the case if upon evaluation of these questions—

12. On or about January 17, 1978 in the District of Rhode Island, Edward D. D'Alo received a quantity of metal from Chase Metals Service, Inc.

13. On or about February 2, 1978 in the District of Rhode Island, Mark S. D'Alo and Edward D. D'Alo assembled at the D'Alo Tool Company, Johnston, Rhode Island.

All in violation of Title 18, United States Code, Section 371.

The Court advised the defendant that on the state of the evidence the conspiracy to manufacture would have to be dismissed; however, if defense counsel preferred to make a motion for a mistrial as to the entire indictment it would be granted. The defendant elected not to proceed, but rather moved for a mistrial, which was granted.

There are two questions before the Court: a) Was there such prosecutorial or judicial overreaching in causing a mistrial that the double jeopardy clause would prohibit a retrial? b) Having moved for a mistrial is the defendant now being unconstitutionally penalized by being required to defend a different charge (selling), which was not part of the original dismissed indictment?

The first issue is not novel. *See, e. g., United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1975); *United States v. Grasso,* 552 F.2d 46 (2nd Cir. 1976); *United States v. Wilson,* 534 F.2d 76 (6th Cir. 1976); *United States v. Kessler,* 530 F.2d 1246 (5th Cir. 1976); *United States v. Jamison,* 505 F.2d 407 (D.C.Cir.1974); *cf. Midgett v. McClelland,* 547 F.2d 1194 (4th Cir. 1976). In considering this issue, the Supreme Court has determined that:

> Where . . . a *defendant* successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution. "[A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by a prosecutorial or judicial error." *United States v. Jorn,* 400 U.S. 470, 485 [91 S.Ct. 547, 557, 27 L.Ed.2d 543] (1971) (opinion of Harlan, J.). Such a motion by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact. "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States v. Dinitz,* 424 U.S. 600, 609 [96 S.Ct. 1075, 1080, 47 L.Ed.2d 267] (1976). But "[t]he

Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *Id.,* at 611 [96 S.Ct. 1075, 1081].

*United States v. Scott,* 437 U.S. 82, 93–94, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978).

Although the defendant in *Scott* obtained not a mistrial, but rather a dismissal of the indictment, the language is applicable to the facts under consideration in that in each instance the proceedings were terminated in the defendant's favor before any determination of guilt or innocence. *See id.* at 98–99, 98 S.Ct. at 2197–2198.

 The standard we must apply to determine if the government intended to provoke this mistrial was succinctly but completely set forth in *Kessler, supra*:

> . . . the Government must have, through "gross negligence or intentional misconduct," caused aggravated circumstances to develop which "seriously prejudice[d] [this] defendant" causing him to "reasonably conclude that a continuation of the tainted proceeding would result in a conviction". *United States v. Dinitz,* 96 S.Ct. at 1080.

*Kessler, supra,* at 1256 (footnote omitted).

I adopt this rule and find that the defendant has failed to satisfy this criterion. The government insisted at trial as it does today that it was correct in proffering the questioned testimony, and it may be that the Court was in error in its view of the admissibility of the evidence. This is immaterial. There was no gross negligence or intentional misconduct on the part of the prosecution.

Neither was there any evidence of judicial overreaching. Though the Court raised the various issues—admissibility of evidence concerning sale of slugs by the defendants, the *Petrozziello* issue, inadvertent failure of the government to turn over a tape recording, failure of the evidence to prove the corpus delicti (conspiracy)—it did not *sua sponte* declare a mistrial.

The second question is more troublesome. Undoubtedly, the government profited by the Court's comments at the conference and by the mistrial itself. The prosecution obviously realized it would have difficulty proving a violation of 18 U.S.C. § 491(b) bottomed on the *manufacturing* of slugs; and so, instead of seeking a retrial on the original indictment, it dismissed the same and filed the present information postulated on the *selling* prohibitions of the Code.

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court considered the question of whether a defendant who successfully attacks his conviction, but is later retried and reconvicted, may constitutionally receive a more severe sentence than was imposed at the first trial. The Court held that "the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be . . . a violation of due process of law." *Id.* at 724, 89 S.Ct. at 2080. The rationale of *Pearce* was not grounded upon the proposition that *actual* retaliatory motivation must inevitably exist, *see Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), but on the consideration that "the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction." *Pearce* at 725, 89 S.Ct. at 2080.

The Court extended the *Pearce* doctrine beyond the sentencing authority to the prosecution in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In that case, the defendant was originally charged with a misdemeanor of assault with a deadly weapon and brought to trial in a North Carolina inferior court. Following his conviction, the defendant asserted his right under North Carolina law to a trial *de novo* in a higher court where he was charged and convicted not of the misdemeanor, but of the felony of assault with a deadly weapon with intent to kill or inflict serious bodily injury.

Because it found that "a person convicted of an offense is entitled to pursue his statutory right to a trial *de novo* without apprehension that the State will retaliate by substituting a more serious charge for the original one," *id.* at 28, 94 S.Ct. at 2102, the Court found the bringing of the more serious charge unconstitutional. Significantly, the Court found no evidence that the prosecutor acted in bad faith or with malice in seeking the felony indictment.

Although the Supreme Court has not addressed a case involving the issue of a mistrial, I see no reason why the prosecutor should not be bound by the *Pearce* and *Blackledge* constraints. The very same concern evident in the Supreme Court cases— that a defendant will hesitate to pursue a statutory or constitutional right for fear of prosecutorial retaliation—exists in this case; the defendant is in effect being penalized for moving for a mistrial. A similar conclusion was reached by the District of Columbia Circuit in *United States v. Jamison*, 505 F.2d 407 (D.C.Cir.1974).

In *Jamison*, the defendants were reindicted for first-degree murder after their first trial for second-degree murder had ended in a mistrial granted on motion of the defendants. After reviewing *Pearce* and *Blackledge*, the court determined that absent any showing of justification for the increase in the degree of the crime initially charged, the reindictment on a more serious charge denied the defendants due process of law. *Id.* at 413.

The government correctly points out that the Due Process Clause is not offended by all possibilities of increased punishment, "'but only those that pose a realistic likelihood of vindictiveness.' [*Blackledge v.*] *Perry* [417 U.S.] at 27 [94 S.Ct. 21]." Noting that in *Blackledge* such vindictiveness was found when the prosecution "upped the ante" by recharging a misdemeanant with a felony, the government distinguishes the instant case by pointing out that the new charges against D'Alo are under the same statute and carry the same penalty as the old charges. Moreover, the government argues that the likelihood that the defendant will be sentenced on all three counts consecutively, and thereby receive a greater pun-

ishment than under the original indictment (which contained two counts), is so remote as to constitute no genuine apprehension of vindictiveness. The government also attempts to distinguish *Jamison* on the ground that here there is no increase in the degree of the crime, and thus no increase in the "penalty exposure."

 I cannot agree with the government's arguments. *Blackledge* did not hinge on the fact that the charge was upped from a misdemeanor to a felony; neither did *Jamison* hinge on the fact that the degree of the crime was increased. Rather, the crux of the issue in both cases was that the defendant was penalized for exercising his rights. Although it may be true in the instant case that the degree of the crime charged has not increased and that the likelihood of a more severe sentence is remote, the fact is that the government has improved its potential for conviction by reformulating the charges against D'Alo. To victimize a defendant significantly for having successfully pursued a legitimate trial tactic runs afoul of the constitutional guarantee of due process, which requires that a defendant not labor under the apprehension of retaliatory measures. The new information, unquestionably prompted by the evidence developed at trial prior to the declaration of mistrial, increases the potential for conviction. This kind of penalty cannot be imposed upon the defendant's exercise of his constitutional right to a fair trial. Therefore, I must conclude that *Pearce* and *Blackledge* are controlling. Absent a showing of justification for the alteration of the charges, reprosecution must be confined to the charges as recited in the original indictment.

The defendant's motion to dismiss the superseding information is granted.