STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Hayes JOHNSON, Defendant-Appellant.

Supreme Court

*No. 97–1360–CR. Oral argument November 4, 1999.—Decided February 18, 2000.*

## 2000 WI 12

(Also reported in 605 N.W.2d 846.)

For the plaintiff-respondent-petitioner the cause was argued by *Lara M. Herman*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there was a brief by *Russell D. Bohach* and *Brennan & Collins*, Madison and oral argument by *Russell D. Bohach*.

¶ 1. JON P. WILCOX, J. The State of Wisconsin petitions this court for review of a published decision of the court of appeals, *State v. Hayes Johnson*, 223 Wis. 2d 85, 588 N.W.2d 330 (Ct. App. 1998), which

reversed an order denying the defendant's motion for postconviction relief. The case presents two issues: (1) whether the defendant has established a realistic likelihood of prosecutorial vindictiveness, which would give rise to a presumption of vindictiveness; and (2) whether the defendant has established actual prosecutorial vindictiveness.

¶ 2. The defendant, Hayes Johnson, was initially tried before a jury on a single count of first-degree sexual assault. The jury was unable to reach a verdict, and the trial court declared a mistrial. Before retrial, the prosecutor filed an amended information charging the defendant with two counts of first-degree sexual assault and one count of burglary, based on the same course of conduct as the initial charge. The prosecutor offered to withdraw the new charges in exchange for the defendant's guilty plea to a single count of first-degree sexual assault. The defendant rejected the plea offer and moved to dismiss on the ground that the filing of additional charges gave rise to a presumption of prosecutorial vindictiveness. The trial court denied the motion, holding that no presumption of vindictiveness arose from the addition of charges after the mistrial and that there was no other evidence of vindictiveness.

¶ 3. On retrial, the jury found the defendant guilty of both counts of sexual assault, but found him not guilty of the burglary charge. In a postconviction motion, the defendant renewed his prosecutorial vindictiveness claim. The trial court again denied the motion, and the defendant appealed.

¶ 4. The court of appeals reversed, concluding that the institutional bias against retrials, together with the prosecutor's addition of new charges and offer to withdraw them if the defendant would plead guilty,

was sufficient to trigger the presumption of prosecutorial vindictiveness.

¶ 5. On review, we hold that the defendant did not establish a realistic likelihood of vindictiveness in this case and that a presumption of vindictiveness therefore does not apply. We also determine that the defendant has failed to establish actual vindictiveness. We therefore reverse the decision of the court of appeals.

I.

¶ 6. The relevant facts are as follows. In October 1994 the defendant was arrested after his girlfriend's five-year-old daughter complained that he had sexually assaulted her. At the preliminary hearing on October 24, 1994, the victim testified that the assault occurred when the defendant entered her bedroom and laid her body on top of his. She stated that during the assault he touched her vagina with his hand and with his penis.

¶ 7. The State filed an information charging the defendant with one count of first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1)(1991–92).[1] The defendant rejected the State's offer to reduce the charge to second-degree sexual assault in exchange for the defendant's guilty plea. The case proceeded to trial in the Circuit Court of Milwaukee County, Judge Diane S. Sykes, on October 31, 1995. On November 3, 1995, the jury stated that they were unable to reach a verdict in the case, and the trial court ordered a mistrial. Neither party objected to the mistrial order.

---

[1] All subsequent references to the Wisconsin Statutes refer to the 1991–92 volumes unless otherwise indicated.

¶ 8. At a hearing on November 6, 1995, the defense attorney indicated that the prosecutor intended to file an amended information. The trial court set the case for retrial on December 4, 1995.

¶ 9. On November 14, 1995, the prosecutor filed an amended information charging the defendant with two counts of first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1) (one count based on the defendant's touching of the victim's vagina with his finger, the other count based on the defendant's touching the victim with his penis), and one count of burglary in violation of Wis. Stat. § 943.10(1)(f) (based on the defendant's entry into the victim's bedroom with intent to commit a felony). In a motion accompanying the amended information, the prosecutor explained that under the facts of the case the defendant could properly be prosecuted for these three charges, and that the jury should have the opportunity to consider all of the appropriate charges relating to the course of conduct.

¶ 10. On November 28, 1995, the defendant filed a motion to dismiss the amended information, alleging in part that the prosecutor's filing of additional charges after the mistrial gave rise to a presumption of prosecutorial vindictiveness because a realistic likelihood of vindictiveness existed under the circumstances of the case.

¶ 11. On December 4, 1995, the prosecutor wrote a letter to the defendant offering to withdraw the amended information in exchange for the defendant's agreement to plead guilty to a single count of first-degree sexual assault.[2] The letter stated:

---

[2] This letter, which the court of appeals quoted in its decision, see *Johnson*, 223 Wis. 2d at 88, was entered into the record before this court.

Dear Mr. Wasserman:

I'm writing to you regarding *State v. Hayes Johnson*, case number F94–3955.

Attached please find the State's Brief in Opposition to the Defense Motion to Dismiss the Amended Information and a copy of the letter of transmittal to the Court.

I also summarize herein our discussion of Saturday, December 2, 1995, regarding a possible resolution of this matter. As you know, your client is currently charged with:

Two counts of First Degree Sexual Assault of a Child

One count of Burglary.

He faces 90 years in prison; if your client wishes to reduce his exposure, the State makes the following offer:

Plead guilty to only one count of First Degree Sexual Assault of a Child; the State will withdraw the Amended Information, thereby dismissing the second count of First Degree Sexual Assault of a Child and the Burglary and recommend a Presentence Report; the State is willing to advise the Court that the State does not recommend the imposition of maximum sentence and to leave the sentence to the Court; you are free to argue for whatever sentence you feel is appropriate, including placement in a counselling program. Further, I will recommend that the sentence run concurrent to your client's probation revocation time.

It is my hope that these very young children, only 5 and 7, can be spared additional Court intrusions in their young lives. That is why I am willing to offer to dismiss charges constituting 50 years of prison exposure, to recommend that the Court not impose the maximum sentence, to recommend concurrent

time, to leave sentencing to the Court and you are free to make whatever recommendation you feel is appropriate. If we cannot reach a resolution that spares these young children from the trauma of another round of testifying, and if the defendant is convicted of some or all of the charges, it is the State's intention to affirmatively and strongly recommend the imposition of a very lengthy prison sentence which will keep the defendant in prison for many decades.

I have no objection to your client entering his plea as an Alford plea, denying his guilt but accepting the State's offer to cut his losses.

If your client wants to take advantage of the opportunity to be out of prison in a relatively short period of time, this offer is, in my judgment, his best bet to accomplishes [sic] that objective.

Thank you for your attention to this matter.

Sincerely,

[signed]

Gale G. Shelton

¶ 12. That same day, the trial court denied the defendant's motion to dismiss. The court relied on the case law of other jurisdictions holding that there is no presumption of prosecutorial vindictiveness when additional charges are filed after a mistrial caused by a hung jury. The court explained that the hung jury and mistrial put the parties back in the position they were in before the trial began. Because the prosecutor would clearly have had the discretion to file these charges before the trial, there was no presumption of vindictiveness raised by filing them after the mistrial. Finding no other evidence of prosecutorial vindictiveness, the court denied the motion.

689

¶ 13. The defendant rejected the state's plea offer, and the case proceeded to retrial. On December 7, 1995, the jury found the defendant guilty of both counts of first-degree sexual assault, but not guilty of burglary.

¶ 14. The defendant was subsequently sentenced to 20 years in prison on each count of sexual assault, to be served consecutively. In a motion for postconviction relief, the defendant renewed his claim that the amended information should have been dismissed because of prosecutorial vindictiveness. The trial court denied the motion, and the defendant appealed.

¶ 15. The court of appeals reversed the trial court's order denying postconviction relief and remanded the case for further proceedings. The court concluded that the defendant had established both (1) that he had exercised a protected right, his right to a jury trial; and (2) that there was a realistic likelihood that the prosecutor had added new charges to punish him for exercising this right. *Johnson*, 223 Wis. 2d at 94. Specifically, the court determined that the institutional bias against retrials and the prosecutor's offer to withdraw the amended information in exchange for a guilty plea were sufficient to trigger a presumption of prosecutorial vindictiveness. *Id.* at 95. The State petitioned for review of this decision of the court of appeals.

II.

¶ 16. In reviewing a prosecutorial vindictiveness claim, we are mindful of the fact that a prosecutor has great discretion in charging decisions and is generally answerable for those decisions to the people of the state and not the courts. *State v. Karpinski*, 92 Wis. 2d 599, 607–08, 285 N.W.2d 729 (1979). We review a prosecu-

tor's charging decisions under an erroneous exercise of discretion standard. *Id.* at 609.

¶ 17. In order to decide whether a prosecutor's decision to bring additional charges constituted prosecutorial vindictiveness in violation of the defendant's due process rights, we first must determine whether a realistic likelihood of vindictiveness exists; if indeed it does exist, then a rebuttable presumption of prosecutorial vindictiveness applies. If we conclude that no presumption of vindictiveness applies, we next must determine whether the defendant has established actual prosecutorial vindictiveness.

¶ 18. The legal principles surrounding prosecutorial vindictiveness claims present questions of law that we review *de novo. United States v. Contreras,* 108 F.3d 1255, 1262 (10th Cir. 1997). However, we review the lower court's finding of fact regarding whether the defendant established actual vindictiveness under the clearly erroneous standard. *Id.* at 1262.

A.

¶ 19. There is a dearth of Wisconsin precedent to guide our analysis. Wisconsin courts have examined claims of judicial vindictiveness in sentencing after appeal and reconviction. *See State v. Stubbendick,* 110 Wis. 2d 693, 329 N.W.2d 399 (1983) and *State v. Tarwid,* 147 Wis. 2d 95, 433 N.W.2d 255 (Ct. App. 1988). The court of appeals has considered a claim of prosecutorial vindictiveness in a prosecutor's filing of an additional charge after a defendant's successful appeal. *State v. Edwardsen,* 146 Wis. 2d 198, 430 N.W.2d 604 (Ct. App. 1988). However, no previous Wisconsin case has examined a claim of vindictiveness

arising before a defendant's successful appeal. We begin our analysis by examining the United States Supreme Court cases that established the legal doctrine of prosecutorial vindictiveness.

¶ 20. The legal principles surrounding prosecutorial vindictiveness developed in a series of United States Supreme Court cases recognizing the basic principle that it is a violation of due process when the state retaliates against a person "for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982).

¶ 21. The Court first recognized this principle in the context of a judge's imposition of an increased sentence after a new trial, in *North Carolina v. Pearce*, 395 U.S. 711 (1969). The Court held that when a judge imposes an increased sentence after a defendant obtains a new trial upon appeal, the judge must set forth in the record affirmative reasons "based upon objective information concerning identifiable conduct on the part of the defendant." *Pearce*, 395 U.S. at 726. In effect, *Pearce* "applied a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *Goodwin*, 457 U.S. at 374.

¶ 22. The Court extended *Pearce*'s reasoning to prosecutorial actions that result in increased punishment after a new trial in *Blackledge v. Perry*, 417 U.S. 21 (1974). The defendant in *Blackledge* was convicted of a misdemeanor assault charge in a bench trial before the district court. *Id.* at 22. After his conviction in district court, the defendant filed a notice of appeal requesting a new trial in superior court, which was his absolute right under North Carolina law. *Id.* Before the new trial, the prosecutor obtained a new grand jury indictment replacing the misdemeanor assault charge

with a felony assault charge. *Id.* at 23. The defendant was convicted of the felony charge. *Id.*

¶ 23. In considering whether the defendant's due process rights were violated, the Court noted that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.' " *Id.* at 27. A realistic likelihood of vindictiveness existed in the case because the prosecutor had the means to discourage appeals by "upping the ante" against the defendant with a more serious charge. *Id.* at 27–28. Although there was no evidence of actual malice or bad faith on the part of the prosecutor, the apprehension of a retaliatory motive could not be allowed to deter the defendant's statutory right to appeal. *Id.* at 28. The Court did note that "[t]his would clearly be a different case" if the State had established that the new charge was based on new events and could not have been brought in the original proceeding. *Id.* at 29 n.7. However, under the circumstances of the case, it was constitutionally impermissible for the State to bring the more serious charge in response to the defendant's appeal. *Id.* at 28–29.

¶ 24. The Court declined to extend the principles of *Pearce* and *Blackledge* to a prosecutor's pretrial filing of increased charges in *Bordenkircher v. Hayes*, 434 U.S. 357 (1978). The prosecutor in *Bordenkircher* carried out an explicit threat to file more serious charges against the defendant if the defendant refused to plead guilty to a less serious offense. *Bordenkircher*, 434 U.S. at 358–59. The Court held that the prosecutor's conduct did not violate the defendant's due process rights. *Id.* at 365.

¶ 25. The Court explained that both *Pearce* and *Blackledge* involved "the State's unilateral imposition

of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation 'very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power.' " *Id.* at 362, *quoting Parker v. North Carolina*, 397 U.S. 790 (1970). The due process violation at issue in *Pearce* and *Blackledge* "lay not in the possibility that a defendant might be deterred from the exercise of a legal right,. . .but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." *Id.* at 363 (citations omitted). No similar element of retaliation against a defendant existed in the plea bargain context "so long as the accused is free to accept or reject the prosecution's offer." *Id.*

¶ 26. In reaching this conclusion, the Court was mindful of the prosecutor's great discretion in charging decisions. As long as probable cause supports the charged offenses:

> [T]he decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion. . . . To hold that the prosecutor's desire to induce a guilty plea is an 'unjustifiable standard,' which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself. *Id.* at 364–65.

Therefore, the Court held that no rigid constitutional rule of prosecutorial vindictiveness applied. *Id.* at 365.

¶ 27. The Court again declined to recognize a presumption of vindictiveness in the pretrial context in *United States v. Goodwin*. The defendant in *Goodwin*

694

was charged with several misdemeanor and petty offenses based on his conduct during a traffic stop by a United States Park Policeman and was arraigned before a United States Magistrate. *Goodwin*, 457 U.S. at 370. After initiating plea negotiations with the prosecutor, the defendant decided to reject a guilty plea and requested a jury trial in district court. *Id.* at 371. The case was transferred to the district court, and an Assistant United States Attorney [AUSA] assumed the role of prosecutor. *Id.* The new prosecutor obtained an indictment charging the defendant with one felony and three related misdemeanors, and the defendant was convicted of the felony and one misdemeanor. *Id.* The defendant moved to set aside his conviction on the ground that the filing of the felony charge gave rise to an impermissible appearance of retaliation. *Id.*

¶ 28. In considering the defendant's argument, the Court noted that "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings." *Id.* at 372. Thus, a punitive motivation alone cannot distinguish justifiable governmental response to criminal conduct from impermissible governmental response to non-criminal, protected activity. *Id.* at 372–73. The presumption of vindictiveness is therefore limited to "cases in which a reasonable likelihood of vindictiveness exists." *Id.* at 373.

¶ 29. The Court further explained that an inflexible presumption of vindictiveness must be viewed with particular caution in the pretrial setting. *Id.* at 381. The prosecutor's initial charging decision "may not reflect the extent to which an individual is legitimately subject to prosecution," and before trial, the prosecutor must remain free to exercise his or her broad discretion to determine which charges properly reflect society's interests. *Id.* at 382.

¶ 30. The Court then examined the nature of the right asserted by the defendant. After initiating plea negotiations, the defendant asserted his right to a jury trial. *Id.* Under *Bordenkircher*, "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382–83. The Court also pointed out that the case would not involve a duplicative expenditure of resources or ask the prosecutor " 'to do over what it thought it had already done correctly.' " *Id.* at 383 (citation omitted).

¶ 31. Finally, the court explained that "[p]erhaps most importantly, the institutional bias against the retrial of a decided question that supported the decisions in *Pearce* and *Blackledge* simply has no counterpart in this case." *Id.* at 383. In sum, although a defendant in an appropriate case might prove that a prosecutor's charging decision was motivated by actual vindictiveness, "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Id.* at 384.

¶ 32. Thus, the United States Supreme Court has set forth a prophylactic rule that a presumption of vindictiveness arises when a prosecutor files more serious charges against a defendant after the defendant appeals his conviction and wins a new trial. However, the Court has not extended this presumption to the pretrial context.

B.

¶ 33. We now must apply these legal principles to the facts of this case. We begin by considering the defendant's argument that a presumption of vindictiveness has arisen in his case. The defendant

696

acknowledges that he bears the burden of establishing that under the circumstances of his case a realistic likelihood of vindictiveness exists, giving rise to a presumption of vindictiveness. Br. of Def.-Appellant at 12.

¶ 34. The relevant circumstances are as follows. The defendant's first trial on a single count of first-degree sexual assault ended in a mistrial when the jury was unable to reach a verdict. The prosecutor subsequently amended the information by adding two new charges against the defendant: a second count of first-degree sexual assault of a child, and a count of burglary. In the December 4, 1995 letter, the prosecutor offered to withdraw the amended information and thereby dismiss the additional charges in exchange for the defendant's guilty plea to the single count of first-degree sexual assault. The defendant declined the offer and was convicted of the two counts of first-degree sexual assault.

¶ 35. As noted, United States Supreme Court cases have applied a presumption of prosecutorial vindictiveness to the filing of increased charges after a successful appeal, but have not extended this presumption to the pretrial context. The Court has never considered a vindictiveness claim in the mistrial context.

¶ 36. Courts in other jurisdictions have pointed out that a mistrial does not fall clearly into either the pretrial or the post-trial category. *See, e.g., United States v. Mays,* 738 F.2d 1188, 1190 (11th Cir. 1984). In cases like the one before us, the Seventh Circuit has observed that "[c]ourts have consistently held that no realistic likelihood of vindictiveness is found when a jury is deadlocked and both parties agree that a declaration of mistrial is a necessity." *United States v. Whaley,* 830 F.2d 1469, 1479–80 (7th Cir. 1987), *abro-*

697

*gated in part on other grounds by United States v. Durrive,* 902 F.2d 1221 (7th Cir. 1990).[3] Many state courts are in agreement.[4] These courts generally reason that no appearance of vindictiveness is created when a prosecutor adds charges after a mistrial caused by a hung jury, because the defendant has exercised no protected right against which the prosecutor might retaliate. *Mays,* 738 F.2d at 1190 ("Mays did not pursue any right such as would instigate retaliatory action on the part of the prosecution. Thus, the additional

[3] *See also Contreras,* 108 F.3d at 1263–64 (10th Cir. 1997); *United States v. Fiel,* 35 F.3d 997, 1007–08 (4th Cir. 1994); *United States v. Khan,* 787 F.2d 28, 32 (2d Cir. 1986); *United States v. Ruppel,* 724 F.2d 507, 507 (5th Cir. 1984); *United States v. Thurnhuber,* 572 F.2d 1307, 1310 (9th Cir. 1977); *Mays,* 738 F.2d at 1190. *See also United States v. Marrapese,* 826 F.2d 145, 149 (1st Cir. 1987)(expressing doubt that a presumption of vindictiveness could apply to added charges after a mistrial caused by a hung jury and holding that in any case the prosecutor's explanation rebutted any likelihood of vindictiveness); Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure* § 13.7 at 84 n.29.1 (Supp. 1991)(noting that there is a dispute as to whether a presumption applies "in cases which are not entirely in a pretrial setting but in which there was not a conviction and appeal").

[4] *State v. Wilkins,* 534 So. 2d 705, 706 (Fla. 1988); *Griffin v. State,* 464 S.E.2d 371, 376 (Ga. 1995); *Harris v. State,* 481 N.E.2d 382, 385–86 (Ind. 1985); *Woods v. State,* 775 S.W.2d 552, 555–56 (Mo. App. 1989)(deciding in a review for plain error that the filing of more serious charge after a mistrial did not raise a recognizable presumption of vindictiveness); *State v. Person,* 781 S.W.2d 868, 871 (Tenn. Crim. App. 1989); *Woodson v. State,* 777 S.W.2d 525, 529 (Tex. Ct. App. 1989). *But see Twiggs v. Superior Court,* 667 P.2d 1165, 1173 (Cal. 1983)(concluding that a strong presumption of vindictiveness was warranted by the filing of an amended information after a mistrial caused by a hung jury).

charges cannot be characterized as having arisen from any exercise of a protected right."). *See also Khan*, 787 F.2d at 33 ("Defendant did nothing here that was likely to inspire the wrath of the prosecutor."); *Whaley*, 830 F.2d at 1479 ("Appellant Whaley took no action; he exercised no statutory or constitutional right, and cannot now claim that he was penalized for exercising such a right."); *Marrapese*, 826 F.2d at 149 ("[I]t is unlikely any retaliatory animus flowed from the first trial's ending in a mistrial; after all, the mistrial was due to a hung jury, not to any legal challenge by Marrapese.").

¶ 37. ·The defendant concedes that the weight of authority holds that no presumption of vindictiveness arises when additional charges are brought after a mistrial caused by a hung jury. He argues, however, that a presumption of vindictiveness may arise when a prosecutor files additional charges after a mistrial caused by a hung jury if the defendant establishes a realistic likelihood of vindictiveness under the circumstances of the case. He contends that a realistic likelihood of vindictiveness exists in his case because a defendant after a mistrial caused by a hung jury is in the same position as a defendant on remand after reversal of his conviction of appeal. He also contends that, like a defendant who has successfully challenged his conviction by exercising the right to appeal, he seeks a second trial based upon the assertion of a protected legal right—the right to a jury trial.

¶ 38. Like the great majority of federal courts, we find this reasoning unpersuasive. The presumption of vindictiveness that arose after the defendant's successful appeal in *Blackledge* does not arise after a mistrial caused by a hung jury, because after a mistrial there is no. realistic likelihood that the state is retaliating

against the defendant's protected right to appeal. Subsequent to *Blackledge*, the United States Supreme Court's prosecutorial vindictiveness decisions "have all been rooted in a relatively simple proposition: one may not be punished for the exercise of a *protected* right." *Mays*, 738 F.2d at 1190 (citing *Ruppel*, 724 F.2d at 508)(emphasis in original). In this case, there is no realistic likelihood that the defendant was being punished for exercising a protected right, because the defendant did not bring about the need for a retrial by exercising a protected right. The retrial was necessary because of the jury's inability to reach a verdict, not because of the exercise of any right by the defendant.[5]

---

[5] This is why all of the cases relied upon by the dissent, except for *Twiggs*, are distinguishable. Those cases involved mistrials granted upon the defendant's motion, to preserve fair trial rights. *See In re Bower*, 700 P.2d 1269, 1276 (Cal. 1985) (noting that the defendant was granted a mistrial "which was necessary to insure the fairness of the proceedings against him"); *Murphy v. State*, 453 N.E.2d 219, 223 (Ind. 1983) (noting that a mistrial was declared upon the defendant's motion because of the prosecutor's use of improper identification procedures tainted the trial); *United States v. Jamison*, 505 F.2d 407, 409, 416 (D.C. Cir. 1974) (noting that a mistrial was declared upon the defendant's motion because of ineffective assistance of counsel and declining to distinguish between attacks on the fairness of criminal proceedings before and after trial); *United States v. D'Alo*, 486 F.Supp. 954, 959 (D.R.I. 1980) ("The very same concern evident in the Supreme Court cases. . .exists in this case; the defendant is in effect being penalized for moving for a mistrial.").

The only case the dissent cites that actually recognized a realistic likelihood of vindictiveness when increased charges were brought after a mistrial that resulted from a hung jury, rather than the defendant's exercise of a protected right, is *Twiggs*, 667 P.2d at 1170.

*Mays*, 738 F.2d at 1190; *Khan*, 787 F.2d at 33; *Whaley*, 830 F.2d at 1479; *Marrapese*, 826 F.2d at 149.

¶ 39. The defendant argues that he did cause the retrial by exercising a protected right—the right to a jury trial. He contends that a realistic likelihood of vindictiveness was created by the prosecutor's efforts to persuade him to plead guilty and forego this right. We agree with the federal circuit courts that have consistently rejected this reasoning.

¶ 40. In *United States v. Khan*, the jury in the defendant's first trial on drug charges was unable to reach a verdict on any of the charges against him. *Khan*, 787 F.2d at 30. After the mistrial, the AUSA attempted to persuade the defendant to plead guilty to a single lesser charge instead of proceeding to retrial. *Id.* The AUSA specifically warned the defendant that a superseding indictment might be filed before the second trial. *Id.* The defendant rejected the plea offer, and the AUSA filed a superseding indictment containing additional charges. *Id.* The defendant then expressed interest in pleading to a lesser charge, but the AUSA rejected this offer. *Id.* At the second trial, the defendant was convicted on most of the counts. *Id.* The defendant challenged his convictions on the grounds that the filing of additional charges after the defendant rejected a plea offer gave rise to an unrebutted presumption of prosecutorial vindictiveness. *Id.* at 30–31.

¶ 41. The court rejected the defendant's claim, reasoning that:

> It was not the defendant's request for a trial that precipitated the possible duplication of resources and raised the spectre of the prosecution avenging the defendant's rightful exercise of a constitutional right. The root cause of these troubles was the jury's inability to agree on a verdict. . . . But the govern-

ment did not object to a mistrial. . . .It is difficult to see how this would prompt a prosecutor to act vindictively towards a defendant; all agreed that the action taken by the Court was necessary under the circumstances. *United States v. Thurnhuber*, 572 F.2d 1307, 1310 (9th Cir. 1977). Defendant did nothing here that was likely to inspire the wrath of the prosecutor.

*Id.* at 32–33. As to the defendant's argument that his rejection of a guilty plea might have sparked a vindictive response, the court thought that it was "unrealistic to assume that the government's probable response to a defendant's choice to exercise his fundamental right to a trial would be to seek to penalize and deter, *Goodwin*, 457 U.S. at 381, 102 S.Ct. at 2492, even if that choice follows on the heels of a mistrial." *Id.* at 33.

¶ 42. The Tenth Circuit followed this reasoning in *United States v. Morales*, 108 F.3d 1213 (10th Cir. 1997). In that case, the jury at the defendant's first trial was unable to reach a verdict on charges of conspiracy to distribute marijuana and money laundering. *Id.* at 1216. Before retrial, and after the defendant rejected several plea offers, the United States filed a superseding indictment increasing the charges against the defendant. *Id.* at 1220 and n.5. The court rejected the defendant's claim that the increased charges should have been dismissed because of prosecutorial vindictiveness. *Id.* at 1220. Citing *Khan*, the court explained that under *Bordenkircher*, " 'in the "give-and-take" of plea bargaining there is no element of retaliation so long as a defendant remains free to accept or reject the offer.' " *Id.* at 1120 n.5 (citing *Khan*, 787 F.2d at 31).

702

¶ 43. We determine that the same reasoning applies to the defendant's case and conclude that the fact that the prosecutor filed the additional charges during plea negotiations does not create a realistic likelihood of vindictiveness. As the federal courts have noted, *Bordenkircher* confirmed the legitimacy of plea bargaining and found no element of retaliation in the give-and-take of plea negotiations. *Bordenkircher*, 434 U.S. at 363. The government's interest in persuading the defendant to enter a guilty plea therefore does not justify a presumption of vindictiveness before trial. *Goodwin*, 457 U.S. at 384. We find no reason that a different rule should apply after a mistrial caused by a hung jury. *Accord Morales*, 108 F.3d at 1220 n.5; *Khan*, 787 F.2d at 33; *Mays*, 738 F.2d at 1190.

¶ 44. The defendant makes one additional argument in attempting to establish that a presumption of vindictiveness should apply in this case. He contends that the "lack of any legitimate reasons" for filing the additional charges supports a presumption of prosecutorial vindictiveness. Def.-Appellant's Br. at 18.

¶ 45. This argument misinterprets the law. As the defendant acknowledges earlier in his brief, Def.-Appellant's Br. at 12, the burden is on the <u>defendant</u> to establish a realistic likelihood of vindictiveness giving rise to a presumption of vindictiveness. Once a presumption of vindictiveness is established, the prosecutor may rebut it with an explanation of the objective circumstances that led the prosecutor to bring the additional charges. *Marrapese*, 826 F.2d at 149; *Crozier v. Wyoming*, 882 P.2d 1230, 1234 (Wyo. 1994); *see also Stubbendick*, 110 Wis. 2d at 698–99 (explain-

703

ing that a trial judge may overcome the presumption of vindictiveness that is created when a defendant receives an increased sentence after a new trial by stating sufficient objective reasons for the sentence in the record). Because the defendant has failed to establish that a realistic likelihood of vindictiveness exists in his case, the burden has not yet shifted to the prosecutor to rebut a presumption of vindictiveness.

¶ 46. In conclusion, we reject the defendant's argument that a presumption of vindictiveness arose under the circumstances of this case.

## C.

¶ 47. Our conclusion that a presumption of vindictiveness does not exist in this case does not end our inquiry into whether prosecutorial vindictiveness has violated the defendant's due process rights. As *Goodwin* notes, even when a presumption of vindictiveness does not apply, a defendant may still establish that the prosecutor's decision to add charges was actually motivated by a desire to retaliate against the defendant "for doing something that the law plainly allowed him to do." *Goodwin*, 457 U.S. at 384; *see also Stubbendick*, 110 Wis. 2d at 699 ("Where a sentencing or resentencing record exhibits actual vindictiveness, that too would constitute an abuse of discretion."). To establish actual vindictiveness, "there must be objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Whaley*, 830 F.2d at 1479 (citing *Goodwin*, 457 U.S. at 380–81). We reiterate that the lower court's finding of fact regarding whether the defendant established actual vindictiveness is reviewed under the clearly erroneous standard. *Contreras*, 108 F.3d at 1262.

¶ 48. At the trial court, the defendant relied only on his argument that a presumption of vindictiveness applied because of the increased charges. However, the trial court specifically determined that there was no evidence of vindictiveness in the absence of a presumption. In his brief to the court of appeals, the defendant argued that the facts of the case suggested actual vindictiveness, but the court of appeals did not need to address that issue because it applied a presumption of vindictiveness. Before this court, the defendant argues that the same circumstances that support a presumption of vindictiveness—the "lack of any legitimate reasons" for the new charges and the December 1995 letter—also establish actual vindictiveness.

¶ 49. We conclude that the trial court's determination that the defendant failed to produce evidence establishing actual vindictiveness was not clearly erroneous. Almost all of the circumstances that the defendant claims establish actual vindictiveness essentially amount to allegations that the prosecutor failed to point to new information that led her to file the additional charges. For instance, the defendant points out that there was sufficient evidence to support the two separate sexual assault charges from the outset of the case, and that the prosecutor has not argued that additional or new information led her to file the additional charges. He also notes that the same prosecutor handled both trials, and that he did not commit any new crimes or other conduct that would affect the prosecutor's charging decision.

¶ 50. We are not persuaded that these factors establish actual vindictiveness. At the time of filing the amended information, the prosecutor explained that she believed that the jury should have the opportunity

to hear all of the appropriate charges arising out of the course of conduct. In addition, in her brief in response to the defendant's motion to dismiss the amended information, the prosecutor expressly denied any retaliatory motive and further explained that:

> [T]he State has reassessed it[s] presentation of the evidence, taking into account the additional witnesses developed between the mistrial and now and the development of the case during the first jury trial. . . .It is the State's view that the jury should hear the three charges in the Amended Information and that they most accurately fit the evidence presented on behalf of the State.

Prosecutors have great discretion in charging decisions and are specifically authorized to proceed under any or all statutory provisions that apply to a particular course of conduct. *Karpinski,* 92 Wis. 2d at 607–08 (quoting Wis. Stat. § 939.65). We conclude that the prosecutor's belief that sufficient evidence exists to support a conviction of a new charge provides justification for the decision to file additional charges.[6] *Crozier,* 882 P.2d at 1233. *See also Penley v. State,* 506 N.E.2d 806, 811 (Ind. 1987)(holding that a prosecutor's desire to increase the chances of conviction by adding a burglary charge before the defendant's third trial on a rape

---

[6] The trial court rejected the defendant's argument that there was no testimony at the preliminary hearing to establish that the defendant lacked consent to enter the victim's bedroom. The defendant was ultimately acquitted of the burglary charge. We note that if there were a case in which a defendant established that a prosecutor erroneously exercised his or her discretion in deciding to bring a charge, such evidence would likely be relevant to the question of whether the addition of charges was motivated by actual prosecutorial vindictiveness.

charge was "perfectly permissible" and within the prosecutor's broad discretion).

¶ 51. The last piece of evidence on which the defendant relies to establish vindictiveness is the prosecutor's December 1995 letter offering to withdraw the amended information in exchange for a guilty plea to the original charge. Although the letter does suggest that the prosecutor was strongly motivated to persuade the defendant to plead guilty to the original charge, it is not evidence of prosecutorial vindictiveness. As previously discussed, *Bordenkircher* rejected the argument that a prosecutor's attempt to persuade a defendant to plead guilty by filing increased charges before trial constitutes prosecutorial vindictiveness. Filing additional charges in an attempt to obtain a guilty plea does no more than "present[ ] the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution," and does not violate the Due Process Clause. *Bordenkircher*, 434 U.S. at 365.

¶ 52. Furthermore, the letter itself suggests a non-vindictive reason for the prosecutor's strong motivation to obtain a plea. In the letter, the prosecutor explains that she hopes that the defendant will plead guilty to spare the victim and her young sister from "additional Court intrusions in their young lives" and "from the trauma of another round of testifying."

¶ 53. The prosecutor's desire to spare the victim and her sister from testifying at a second trial is supported by research documenting that testifying against abusers has many adverse effects on children. *See* Julie A. Anderson, *The Sixth Amendment: Protecting Defendants' Rights at the Expense of Child Victims*, 30 J. Marshall L. Rev. 767, 777–79 (1997); L. Christine

Brannon, *The Trauma of Testifying in Court for Child Victims of Sexual Assault v. the Accused's Right to Confrontation*, 18 Law & Psychol. Rev. 439 (1994). The negative emotional consequences of such experiences for children include feelings of shame, guilt, and betrayal. Anderson at 779; Brannon at 442–43. Testifying in court may also cause the child to reexperience feelings of helplessness and powerlessness. Brannon at 442. Studies show that having to testify more than once is especially traumatic. Anderson at 777 n.61. The number of times a child must repeat the story of his or her abuse is one of the strongest predictors of trauma. Brannon at 441–42. Thus, there is evidence that the prosecutor's concern for the child victim and witness was well founded.

¶ 54.　In addition, the prosecutor's desire to spare the children from another round of testimony was also in conformity with her statutory duty to child victims and witnesses. In cases involving child victims and witnesses, the Wisconsin legislature has imposed on prosecutors the duty to "take appropriate action to. . .minimize the length of time the child must endure the stress of his or her involvement in the proceeding." Wis. Stat. § 971.105. In this case, if the prosecutor had been able to persuade the defendant to plead guilty, she would have eliminated the need for the child victim and witness to endure the harmful effects of testifying at the second trial.

¶ 55.　The defendant argues that the desire to prevent the children from testifying is not a legitimate prosecutorial motivation, because it shows that the decision to file additional charges was motivated by a desire to persuade the defendant to plead guilty. Def.-Appellant's Br. at 28. However, as we have repeatedly

explained, "[t]o hold that the prosecutor's desire to induce a guilty plea is an 'unjustifiable standard,' which. . .may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself." *Bordenkircher*, 434 U.S. at 364–65. The prosecutor's desire to obtain a guilty plea therefore does not establish prosecutorial vindictiveness.

¶ 56. In conclusion, we determine that the trial court's decision that the defendant failed to produce objective evidence establishing his claim of actual prosecutorial vindictiveness was not clearly erroneous.

### III.

¶ 57. Having applied the relevant legal principles to the facts of this case, we hold that the defendant has failed to establish a presumption of prosecutorial vindictiveness or actual prosecutorial vindictiveness. We therefore reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 58. Diane S. Sykes, J. did not participate.

¶ 59. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. When a defendant demonstrates, following a mistrial, that a prosecutor has added a more serious charge or has brought additional charges based on the same course of conduct as the initial charge, I conclude that the defendant has established a realistic likelihood that the prosecutor acted vindictively.

¶ 60. Accordingly I conclude that the burden is on the prosecutor in the present case to rebut this find-

ing of a realistic likelihood of vindictiveness. The State must explain what objective circumstances led the prosecutor to bring the new charges. The prosecutor must explain his or her actions so that a "reasonable person would [not] think that there existed a realistic likelihood of vindictiveness." *See* Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure* § 13.7(c) at 106 (2nd ed. 1999) (quoting *United States v. Andrews*, 663 F.2d 449 (6th Cir. 1980)).[1]

¶ 61. In the present case, the second count of sexual assault and the burglary charge were added after the mistrial. These charges related to the same conduct for which the first sexual assault charge was brought. The State does not contest the defendant's contention that the prosecutor did not learn anything new about this case after the prosecutor filed the one-count information on which the first trial was based.

¶ 62. The majority opinion errs by equating the situation presented by this case with a pre-trial scenario in which the prosecutor is properly afforded great latitude in deciding what charges to bring. The majority opinion states, "[W]e find no reason that a different rule should apply after a mistrial caused by a hung jury." Majority op. at ¶ 43. A case in which no mistrial occurred is different from one in which a mistrial is declared. Saying the two are the same does not make them the same.

¶ 63. The majority's analysis does not properly account for what the U.S. Supreme Court has termed

---

[1] In *United States v. Andrews*, 633 F.2d 449, 455–456 (6th Cir. 1980) (en banc), the government increased the charges after the defendants' pre-trial bail motion. The court stated, "[W]e think that only objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness." *Andrews*, 633 F.2d at 456.

an "institutional bias" against re-trying cases. *United States v. Goodwin*, 457 U.S. 368, 377 (1982). While the present case resulted in a mistrial and not a conviction, the "institutional bias" recognized in *Goodwin* also applies in this case.[2] In both a new trial after an appeal and a new trial after a mistrial, a defendant's exercise of the protected right to trial forces a prosecutor to expend additional resources to re-try a case.

¶ 64. The majority opinion refers to several cases consistent with its holding. The rule I endorse also has support in other courts. In *Twiggs v. Superior Ct. of San Francisco*, 667 P.2d 1165 (Cal. 1983), the defendant endured a trial and a mistrial due to a hung jury and was, upon remand, offered a "plea bargain" by the prosecution. The defendant refused the offer and demanded a jury trial. The prosecutor added charges based on the defendant's prior felony convictions, which the prosecutor had known about before the first trial. The California Supreme Court said these circumstances "strongly suggest that the prosecutor unilaterally imposed a penalty in response to the

---

[2] The *Goodwin* analysis is instructive:

> In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*United States v. Goodwin*, 457 U.S. 368, 381 (1982); *see also State v. Edwardsen*, 146 Wis. 2d 198, 203, 430 N.W.2d 604 (Ct. App. 1988), stating:

> Institutional dislike of retrials—rather than legitimate concerns for the public welfare—might subconsciously motivate a vindictive judicial or prosecutorial response to a defendant's exercise of his right to obtain a retrial of a decided question.

defendant's insistence on facing a jury retrial. . . ." *Twiggs*, 667 P.2d at 1171.[3] *See also In re Bower*, 700 P.2d 1269 (Cal. 1985) (presumption of vindictiveness attached when the defendant was charged with a more severe crime after a mistrial); *Murphy v. State*, 453 N.E.2d 219, 227 (Ind. 1983) (same); *United States v. Jamison*, 505 F.2d 407, 413–16 (D.C. Cir. 1974) (same); *United States v. D'Alo*, 486 F. Supp. 954, 959–60 (D.R.I. 1980) (same). Although all of these cases except *Twiggs* involved the situation where the mistrial was granted on the defendant's motion, their applicability to this case is not diminished. In any mistrial situation there is a realistic likelihood that the prosecutor is adding charges to punish the defendant for exercising his or her protected right to proceed with a second trial.

---

[3] The California Supreme Court explained:

> The same considerations that led the [U.S. Supreme] court to condemn such prosecutorial conduct in the context of a postconviction appeal are applicable when the defendant asserts his right to a retrial after a mistrial. As a prosecutor would have a considerable stake in discouraging appeals requiring trials de novo, so too would the prosecution in a case such as this have a great interest in discouraging defendant's assertion of a retrial, particularly since the prosecution was unable to obtain a conviction in the first trial. Here, the defendant has endured a trial and a mistrial due to a hung jury, and when he asserts his right to a jury retrial rather than plead guilty and accept a prison term, he is faced with the possibility of greater punishment than he could have received if the prosecution had secured a conviction, apparently as a result of pursuing his right to be tried by a jury on retrial. Such a situation calls for invoking the prophylactic rule enunciated in *Perry* to protect against both the possibility that defendant will be deterred from exercising a legal right, as well as the danger that the state might be retaliating against the defendant for maintaining his innocence and facing a retrial.

*Twiggs v. Superior Ct. of San Francisco*, 667 P.2d 1165, 1170 (Cal. 1983).

¶ 65. I agree with the court of appeals that the cause be remanded to the circuit court for an evidentiary hearing. The circuit court should determine whether the prosecutor has met its burden to rebut the finding of a realistic likelihood of vindictiveness.

¶ 66. For the reasons stated, I dissent.

¶ 67. I am authorized to state that JUSTICE WILLIAM A. BABLITCH joins this dissent.