STATE of Wisconsin, Plaintiff-Respondent,

v.

Troy L. CAMERON, Defendant-Appellant.†

Court of Appeals

*No. 2011AP1368–CR. Submitted on briefs March 1, 2012.*
*—Decided July 25, 2012.*

2012 WI App 93

(Also reported in 820 N.W.2d 433.)

† Petition for Review Filed.

101

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey W. Jensen* of *Law Offices of Jeffrey W. Jensen,* Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri,* assistant attorney general, and *J.B. Van Hollen,* attorney general.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. NEUBAUER, P.J.  Troy L. Cameron was found guilty by a jury of sixteen counts of possession of child pornography contrary to Wis. Stat. § 948.12(1m) (2009–10)[1]. He appeals his judgment of conviction. Cameron contends that the trial court erred in denying his pretrial motion to dismiss a second set of charges filed by the State on grounds of vindictive prosecution. Cameron additionally contends that the trial court erred in denying his motion to suppress evidence. We reject Cameron's arguments. We conclude that Cameron failed to establish vindictive prosecution. We further conclude that the discovery of the child pornography occurred during a private search and not an unlawful government search. We therefore uphold the trial court's denial of Cameron's motion to suppress. We affirm.

## BACKGROUND

¶ 2.  On January 27, 2004, the State charged Cameron with fourteen counts of possession of child pornography. Cameron's girlfriend, Linda Grana discovered the child pornography in the home she shared with

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

106

Cameron[2] and turned the items over to law enforcement. The circumstances surrounding the discovery of the pornography and Cameron's subsequent arrest were testified to at the hearing on Cameron's motion to suppress evidence.

¶ 3. On November 25, 2003, Cameron was arrested for numerous domestic violence charges. That evening, at Grana's request, Cameron's son packed up Cameron's belongings and placed them in Cameron's vehicles. Grana then went to stay with a friend. On November 28, 2003, while Cameron was still in custody, Grana returned to the home they shared and began to pack up her own belongings. In the basement of the home, there was a closet under the stairs where Grana and Cameron both stored items. Grana testified that while removing her belongings from the closet, she discovered some boxes belonging to Cameron. Grana pulled them out so she "could see what was in there" and discovered "[p]ictures of very young children [in] various states of sexual activity." According to Grana, she put some adult videos and magazines in a box and moved them into Cameron's truck which was sitting in the driveway. Grana testified that she put everything else, including the printed images of child pornography, into a bag belonging to Cameron that she also found in the closet. She then moved the bag into her car. In addition, Grana testified that she put her computer hard drive in her car. Because November 28, 2003, was the Friday after Thanksgiving, Grana contacted the Kenosha County Sheriff's Department on the following Monday, December 1, 2003.

---

[2] Although Grana and Cameron shared the home, the title was in Grana's name and she held the mortgage.

¶ 4. Kenosha County Sheriff's Deputy Stephen Boldus testified that he received a dispatch to Grana's home "regarding child pornography." When he arrived at Grana's residence on December 1, 2003, Grana met him at the front door. Grana told Boldus that "in the process of collecting her ex-boyfriend's things . . . she had uncovered materials that she believed to be child pornography." Grana described the items to Boldus and told him that she had collected the items, placed them in an overnight/duffel bag and placed the bag in her car. Grana did not tell Boldus whose bag it was. Grana then showed Boldus the closet under the stairway where she found the items.

¶ 5. According to Boldus, he then went with Grana to her vehicle, "took the bag out of the vehicle, took it back into the house," sat down at the kitchen or dining room table and went through the contents of the bag. Boldus testified that the bag was not zipped shut, but "stuffed full and open."

¶ 6. Grana also turned over her computer hard drive to Boldus, telling him that there might be child pornography on it. Subsequent forensic examination of the computer hard drive confirmed that 171 images of child pornography had been downloaded to it. Six of the printed photo images of child pornography came back positive for Cameron's fingerprints and three came back positive for Cameron's semen.

¶ 7. During the year following the January 2004 charges, the State extended a plea offer to Cameron and conducted forensic analysis of the evidence. Cameron rejected the State's plea offer. On February 15, 2005, the State filed fourteen additional charges of possession of child pornography against Cameron based on images recovered from the computer hard drive. Then, in August 2005, the State filed an amended information

108

now charging Cameron with fifteen counts of possession of child pornography based on the printed images. All of the charges were consolidated and on January 12, 2009, an amended information was filed ultimately charging Cameron with twenty-six counts of possession of child pornography. Cameron filed numerous pretrial motions, two of which form the basis for this appeal: a motion to dismiss the February 2005 charges based on vindictive prosecution and a motion to suppress the evidence of possession of child pornography.

¶ 8. As to the vindictive prosecution, Cameron argued that the State brought the February 2005 charges to punish him for exercising his right to maintain his innocence and to proceed to trial on the original January 2004 charges. In support, Cameron provided a letter sent to his attorney by the State wherein the prosecutor explains, "Since Cameron would not plead to the charged counts, and since we now have additional evidence, I have charged the new case." As further support, Cameron pointed to the prosecutor's decision to decline filing theft charges against Grana for her disposal of Cameron's vehicle. The trial court denied Cameron's motion finding that, in looking to the entire context of the plea negotiations, "vindictiveness ha[d] not been established." Turning to the motion to suppress, Cameron argued that he had a legitimate expectation of privacy in the items and that Grana did not have authority to consent to a search. The trial court denied Cameron's motion. The trial court found that Grana was not acting as an agent of the police when she obtained and reviewed the contents of the bag and that Cameron did not have a legitimate expectation of privacy as to either the closet or the items stored there.

¶ 9. The cases proceeded to trial and a jury convicted Cameron of counts one through sixteen of the

109

amended information, but found Cameron not guilty of counts seventeen through twenty-six. Cameron appeals.

## DISCUSSION

### *Vindictive Prosecution*

¶ 10.   Cameron contends that the trial court erred in denying his motion to dismiss the second set of charges on grounds of vindictive prosecution.[3] Cameron argues that the prosecutor brought the second set of charges to punish Cameron for declining the State's initial plea offer and instead choosing to go to trial. In support, Cameron points to both the additional charges brought in February 2005 and also the prosecutor's refusal to file charges against Grana for the theft of Cameron's truck. Cameron argues that the prosecutor's strategy was to preserve the credibility of its witness (Grana) while "piling on" charges against Cameron. Cameron's challenge rests on the basic principle that it is a violation of due process when the State retaliates against a person "for exercising a protected statutory or constitutional right." *See State v. Tkacz*, 2002 WI App 281, ¶ 29, 258 Wis. 2d 611, 654 N.W.2d 37 (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). Because we agree with the trial court that Cameron failed to establish retaliation or vindictiveness in response to his decision to go to trial, we uphold the trial court's decision.

---

[3] We note that Cameron was only convicted of one of the eleven counts that originated from the February 2005 charges (count sixteen). Therefore, this issue impacts only one of the sixteen convicted counts of possession of child pornography.

¶ 11. *Standard of Review and Applicable Law.* The legal principles surrounding prosecutorial vindictiveness claims present questions of law that we review de novo. *State v. Johnson*, 2000 WI 12, ¶ 18, 232 Wis. 2d 679, 605 N.W.2d 846. However, we review the trial court's findings of fact regarding whether the defendant established actual vindictiveness under the clearly erroneous standard. *Id.*

¶ 12. As observed in *Johnson*, a court reviewing a claim of vindictive prosecution must be mindful that a prosecutor has great discretion in charging decisions and generally answers to the public, not the courts, for those decisions. *Id.*, ¶ 16. As such, we review the prosecutor's charging decisions for an erroneous exercise of discretion. *Id.* If there is a reasonable likelihood that a prosecutor's decision to bring additional charges was rooted in prosecutorial vindictiveness, a rebuttable presumption of vindictiveness applies. *Id.*, ¶ 17. If there is no presumption of vindictiveness, the defendant must establish actual prosecutorial vindictiveness. *Id.*

¶ 13. It is well established that the filing of additional charges during the give-and-take of pretrial plea negotiations does not warrant a presumption of vindictiveness. *Id.*, ¶ 43. "[J]ust as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Goodwin*, 457 U.S. at 380. Because a "prosecutor's initial charging decision 'may not reflect the extent to which an individual is legitimately subject to prosecution,' " before trial, "the prosecutor must re-

main free to exercise his or her broad discretion to determine which charges properly reflect society's interests." *Johnson*, 232 Wis. 2d 679, ¶ 29 (citing *Goodwin*, 457 U.S. at 382); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 358–59, 365 (1978) (holding that prosecutor's conduct did not violate defendant's due process rights where the prosecutor carried out an explicit threat to file more serious charges if the defendant refused to plead guilty to a less serious offense). Under *Bordenkircher*, "in the 'give-and-take' of plea bargaining there is no element of retaliation so long as a defendant remains free to accept or reject the offer." *Johnson*, 232 Wis. 2d 679, ¶ 42 (citations omitted).

¶ 14. Thus, as Cameron acknowledges, he must show actual vindictiveness motivated by some constitutionally impermissible consideration by the prosecutor. In order to establish actual vindictiveness, "there must be objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights." *Id.*, ¶ 47 (citation omitted).

¶ 15. *The Initial and Added Charges.* Here, the State extended an "Offer for Resolution" to Cameron shortly after the initial charges were filed. The offer stated, "Waive preliminary hearing and plead to 14 counts of Possession of Child Pornography. State will agree not to charge additional counts and will have a free hand at the time of sentencing." No resolution was reached. On February 15, 2005, the State filed a second set of charges—including fourteen additional counts of child pornography—in a separate case. That same day, the prosecutor wrote to Cameron's attorney, stating: "Since Cameron would not plead to the charged counts,

and since we now have additional evidence, I have charged the new case." Again, no resolution was reached.

¶ 16. The prosecutor testified at the motion hearing that she was not frustrated with Cameron's refusal to plead and that she recognized he was entitled to a trial. The second set of charges arose upon consideration of the then-completed DNA analysis and the forensic findings on the hard drive. Prior to filing the second case, the prosecutor met with Cameron's defense counsel and the detective who made the forensic findings for purposes of providing defense counsel with all of the additional evidence that could result in further charges. They viewed over one hundred images of child pornography that had been accessed on the computer. After a resolution still was not reached in the first case, the prosecutor began to talk to defense counsel about the likelihood of charging a second case because of the quantity of images. The prosecutor testified that if she were to proceed to trial in the first case, she believed the quantity of downloaded images in the second set of charges would strengthen the original case.

¶ 17. Here, there is no suggestion that the additional charges were not supported by probable cause. The filing of these charges, even though filed after Cameron decided not to plead, does not alone establish presumptive or actual vindictiveness. *Id.*, ¶ 55 (the prosecutor's desire to obtain a guilty plea does not establish prosecutorial vindictiveness); *Bordenkircher*, 434 U.S. at 365 (additional charges did no more than present defendant "with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution" and did not violate due process rights); *State v. Williams*, 2004 WI App 56, ¶ 48, 270 Wis. 2d 761, 677 N.W.2d 691 (no actual vindictiveness

113

where prosecutor threatened defendant with additional charges if he insisted on going to trial).

¶ 18. *Declined Charge Against Grana.* In an effort to bolster his claim, Cameron contends that the second set of charges, when viewed in conjunction with the prosecutor's decision not to bring theft charges against Grana, was an impermissible attempt to gain a "tactical advantage" in retaliation for his decision to proceed to trial.[4] This too is a nonstarter.

¶ 19. The facts surrounding Cameron's claim are as follows. At the time of his arrest, Cameron had a nonoperable Dodge Raider parked in the driveway of the home he shared with Grana. The vehicle was allegedly owned by Cameron's parents. According to the investigation report attached to the referral for charges, Grana told the police that when she was moving out of the residence, she contacted Cameron's

---

[4] In so arguing, Cameron fails to provide any legal authority, and we have not uncovered any, to support his claim that actual vindictiveness can arise from a prosecutor's charging decision as to an individual who is also a witness against the defendant. While Cameron points to *State v. Lettice*, 205 Wis. 2d 347, 349, 351–53, 556 N.W.2d 376 (Ct. App. 1996), in support of his claims, that case involved prosecutorial misconduct in initiating charges against Lettice's attorney three days before trial without sufficient evidence, not prosecutorial vindictiveness. Further, the State counters Cameron's argument by pointing out that immunity often involves weighing the question of whether the state should forego prosecution of one party in order to gain sufficient evidence for the conviction of other parties. *See State v. Koller*, 87 Wis. 2d 253, 277, 274 N.W.2d 651 (1979). Because we are affirming based on the facts of this case, we need not further address this issue. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issue need be addressed).

114

parents and told them to remove the vehicle from her driveway, but they did not. Grana subsequently gave permission to a third party to remove the vehicle from the property. In August 2004, Cameron's parents contacted the Kenosha County Sheriff's Department to report the vehicle stolen. The prosecutor ultimately declined to file charges; her notes on the denial indicate that the "1988 $500 value vehicle was left on Linda Grana's property when [Cameron] was taken into custody for felony [domestic violence]." The vehicle "didn't even run and was left in the driveway." Cameron did nothing about this property. He made no arrangements with his parents to reclaim or move the vehicle and at some point it "becomes abandoned." The prosecutor testified that as "wrong as it was of Miss Grana," she considered whether she had proof beyond a reasonable doubt and determined that the charge "lacked prosecutive merit," and did not warrant the empaneling of a jury. The prosecutor expressly denied that her decision was based on Grana's role in the child pornography case against Cameron.

¶ 20. The trial court determined that vindictiveness had not been established in relation to the prosecutor's decision not to file charges against Grana. Further, the court found that, when taken in context, the prosecutor's statements in the written plea negotiations and her testimony as to why she brought the second set of charges compelled the court to conclude that there was no prosecutorial vindictiveness. Based on our review of the record, the trial court's findings are supported by the testimony and we agree with its assessment that Cameron failed to establish vindictiveness. The record reflects that the prosecutor's decision to bring a second set of charges was based on an accumulation of evidence and her belief that this addi-

tional evidence would strengthen the State's case on the original charges. The decision not to charge Grana falls within the broad discretion of the prosecutor, *see Johnson*, 232 Wis. 2d 679, ¶ 16, and there is no indication that this discretion was erroneously exercised. In short, we agree with the trial court that there is no objective evidence that the prosecutor acted in order to punish Cameron for standing on his legal rights. *See id.*, ¶ 47.

## *Suppression of Evidence*

¶ 21.  Cameron next contends that the trial court erred in denying his motion to suppress the evidence obtained during the warrantless search of the duffel bag. Cameron contends that because Grana told the police that she found the pornography and the bag while she was in the process of "collecting her boyfriend's things," Boldus could not reasonably have believed that Grana had authority to consent to the search of the bag. For the reasons discussed below, we reject Cameron's argument.

¶ 22.  *Standard of Review.* In reviewing an order denying a motion for the suppression of evidence, we will uphold a trial court's findings of fact unless they are against the great weight and clear preponderance of the evidence. *State v. Richardson*, 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990). However, the application of constitutional principles to those facts is a question of law that we review de novo. *State v. Patricia A.P.*, 195 Wis. 2d 855, 862, 537 N.W.2d 47 (Ct. App. 1995).

¶ 23.  *Private Search.* Both parties addressed Boldus' search of the duffel bag in terms of a warrantless search and seizure. However, it is well settled that the

Fourth Amendment protects individuals against unlawful intrusions made by the government, not against those made by private parties. *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). In other words, the Fourth Amendment is not implicated when articles discovered in a private search are voluntarily turned over to the government. *Coolidge v. New Hampshire*, 403 U.S. 443, 488–89 (1971) (if a private party presents law enforcement personnel with evidence obtained in the course of a private search it is "not incumbent on the police to stop [the individual] or avert their eyes."). The private search analysis applies even if articles are voluntarily turned over by a third party while at the defendant's home. *See, e.g., United States v. Jones*, 421 F.3d 359, 361–62 (5th Cir. 2005) (Fourth Amendment not violated when police entered the defendant's apartment at apartment manager's invitation following the manager's discovery of drugs in the apartment—"a police view subsequent to a search conducted by private citizens does not constitute a 'search' within the meaning of the Fourth Amendment so long as the view is confined to the scope and product of the initial search" (citing *United States v. Runyan*, 275 F.3d 449, 458 (5th Cir. 2001)); *Mears v. State*, 52 Wis. 2d 435, 439–40, 443, 190 N.W.2d 184 (1971) (evidence was the product of a private search when mother of defendant summoned police to the home she shared with defendant to view four fur pieces that she found in a closet and believed were stolen).

¶ 24.    Thus, regardless of where the articles are turned over to the police, a search is a "private search" if three requirements are met:   "(1) the police may not initiate, encourage or participate in the private entity's search; (2) the private entity must engage in the activ-

117

ity to further its own ends or purpose; and (3) the private entity must not conduct the search for the purpose of assisting governmental efforts." *State v. Payano-Roman*, 2006 WI 47, ¶ 18, 290 Wis. 2d 380, 714 N.W.2d 548 (citing *State v. Rogers*, 148 Wis. 2d 243, 246, 435 N.W.2d 275 (Ct. App. 1988)). One must consider the totality of circumstances in determining whether a search is a private search or a government search. *Payano-Roman*, 290 Wis. 2d 380, ¶ 21. We review this issue de novo. *Id.*, ¶ 24.

¶ 25. Here, the trial court expressly found that Grana acted as an individual and not as an agent of the police or State when she removed and reviewed the child pornography and placed it into the duffel bag. It is undisputed that Grana contacted the police and turned over the duffel bag to law enforcement. These findings are fully supported by the record and, based on our review, we are satisfied that the "private search" requirements set forth in *Payano-Roman* are met. While Grana testified that she found the child pornography in a box and moved it to a duffel bag[5], the trial court found that Grana discovered the items in the duffel bag and returned them to the bag. Regardless of where the child pornography was originally found or whether it was presented to law enforcement in its original container, our inquiry is the same: Did the police search exceed the scope of the private search so as to further frustrate the defendant's expectation of privacy? *See United*

---

[5] Boldus' testimony was consistent with Grana's in that he recalled that Grana found the child pornography in a "cubby hole" under the stairs and then "collected all those items and placed it in an overnight bag and had placed that bag in her car." When asked by the defense on cross-examination if "[Grana] found this bag with these items in it," Boldus clarified, "No, she said she found the items, that she put the items in the bag."

*States v. Jacobsen*, 466 U.S. 109, 115–16, 120–22 (1984). Here, we conclude that it did not.

¶ 26. In *Jacobsen*, 466 U.S. at 115–17, and its predecessor, *Walter v. United States*, 447 U.S. 649, 658–59 (1980), the Supreme Court clarified that an individual can retain a legitimate expectation of privacy after a private individual conducts a search. However, "additional invasions of [an individual's] privacy by the government agent must be tested by the degree to which they exceeded the scope of the private search." *Jacobsen*, 466 U.S. at 115. In *Jacobsen*, employees of a private freight carrier, Federal Express, were examining a damaged package when they observed a white powdery substance. *Id.* at 111. The container was a cardboard box wrapped in brown paper. *Id.* Inside, there were five or six pieces of crumpled paper covering a ten-inch-long tube. *Id.* The employees cut open the tube and found a series of four zip-lock bags, with the innermost bag containing the white powder. *Id.* The employees notified the Drug Enforcement Administration and, before the federal agents arrived, replaced the plastic bags inside the tube and the tube and newspapers back in the cardboard box. *Id.* The DEA agent arrived at the freight company, saw that the tube had been slit open, removed the four plastic bags from the tube and opened them. *Id.* at 111–12.

¶ 27. In denying the defendants' motion to suppress evidence, the *Jacobsen* court addressed the initial search of the package by the private employees. *Id.* at 115. The court noted that "[w]hether those invasions were accidental or deliberate, and whether they were reasonable or unreasonable, they did not violate the Fourth Amendment because of their private character." *Id.* (footnote omitted). Further, "[o]nce frustration of the original expectation of privacy occurs, the Fourth

Amendment does not prohibit governmental use of the now-nonprivate information." *Id.* at 117.

> [I]t hardly infringed respondents' privacy for the agents to reexamine the contents of the open package by brushing aside a crumpled newspaper and picking up the tube .... Respondents could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents. *The agent's viewing of what a private party had freely made available did not violate the Fourth Amendment.*

*Id.* at 119 (emphasis added); *see also State v. Sloan,* 2007 WI App 146, ¶ 16, 303 Wis. 2d 438, 736 N.W.2d 189.

¶ 28. We see very little, if anything, to distinguish *Jacobsen* from this case. Whether or not Cameron had a legitimate expectation of privacy in his belongings in the basement closet, Grana (a private citizen) destroyed any expectation when she went through those belongings and discovered the child pornography. After discovering and reviewing the child pornography, Grana placed it in the duffel bag. As in *Jacobsen,* Grana, on her own accord, invited Boldus to her residence for the express purpose of viewing the contents of the duffel bag. *See Jacobsen,* 466 U.S. at 119. Boldus testified that he then took possession of the duffel bag when it was removed from Grana's car. Boldus' subsequent search of the duffel bag did not exceed the scope of Grana's search. In keeping with *Jacobsen,* we conclude that there was no Fourth Amendment violation, and Cameron is not entitled to suppression of the evidence of

child pornography found by Grana in their shared home and voluntarily turned over to law enforcement.[6]

## CONCLUSION

¶ 29.  We conclude that Cameron failed to establish vindictive prosecution as to the second set of charges. We further conclude that Grana's discovery of Cameron's child pornography and law enforcement's subsequent examination of the child pornography at Grana's invitation amounted to a private search not subject to Fourth Amendment protections against unlawful government searches and seizures. We affirm the judgment.

*By the Court.*—Judgment affirmed.

---

[6] The trial court based its decision on Grana's authority to consent to the search. However, we may sustain a trial court holding on a theory or reasoning not presented to the trial court, *State v. Amrine*, 157 Wis. 2d 778, 783, 460 N.W.2d 826 (Ct. App. 1990), and we do so here.