# COURT OF APPEALS
## DECISION
## DATED AND FILED

## December 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1989-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF48

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

 PLAINTIFF-RESPONDENT,

V.

CASEY J. CAMERON,

 DEFENDANT-APPELLANT.

  APPEAL from a judgment and an order of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Affirmed*.

  Before Gundrum, P.J., Grogan and Lazar, JJ.

  **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1	PER CURIAM. Casey J. Cameron appeals from a judgment of conviction for felony murder and six counts of recklessly endangering safety entered upon his plea of no contest and from the circuit court's denial of his postconviction motion for relief. Cameron contends that the State engaged in vindictive prosecution by bringing additional charges against him after he refused to waive his statutory right to a timely filed information. For the following reasons, we affirm.

¶2	According to the complaint filed against him, Cameron robbed a bar at gunpoint in the early hours of October 14, 2019. In the course of committing this robbery, he shot and killed a patron of the bar who was attempting to leave. There were five other patrons inside the bar at the time, several of whom spoke with police and provided descriptions of the incident and the robber. Police identified Cameron as a suspect based on a tip that he shared physical characteristics of the suspect, was married to an employee of the bar that had been robbed, had scratches over his eye after the incident (as the perpetrator was expected to have), and had a roommate whose vehicle matched a description of the car the perpetrator used to drive away from the scene. An officer followed Cameron while he was driving, and collected a DNA sample from a cigarette that Cameron threw out of his car. The DNA matched a sample found on a bandana left at the scene by the perpetrator and another sample taken from under the fingernails of the murder victim, who had had a struggle with the perpetrator before he was shot.

¶3	The State initially charged Cameron with three felony offenses—first-degree intentional homicide, armed robbery, and first-degree recklessly endangering safety—but the State failed to file an information within thirty days of the December 9, 2019 preliminary hearing as required by WIS. STAT.

§ 971.01(2) (2021-22).[1]   Cameron filed a motion to dismiss this case on January 10, 2020.   On January 13, the prosecutor sent an email to Cameron's counsel saying, "Before I concede (which I have to), is there any wiggle room here?  It's just going to be refiled.  If that benefits your client, great.  But if it's just to make a power move, let's talk."  The prosecutor attested that she spoke directly with Cameron's counsel after sending that email, and that the conversation left her with the impression that the defense was concerned about potential appellate issues that might result from withdrawing its motion to dismiss.  In a subsequent email, the prosecutor offered that, if Cameron would withdraw the motion, she would "make a record … as to [his] rationale behind this decision to protect the appellate record[,] [e]ssentially saying that it is in [Cameron]'s best interest not to have additional felonies charged, and so [he is] withdrawing the motion."  The next day, after Cameron did not withdraw his motion, the State moved to dismiss the original case and filed a new criminal complaint, charging Cameron with the three originally charged felonies along with four additional felony counts of first-degree recklessly endangering safety.

¶4     Cameron ultimately pleaded no contest to a reduced charge of felony murder and six counts of first-degree recklessly endangering safety.  The circuit court accepted his plea and found him guilty.  The court later sentenced Cameron to forty years of initial confinement and fifteen years of extended supervision.

¶5     Cameron filed a postconviction motion for relief asserting that the State violated his right to due process by engaging in prosecutorial vindictiveness.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Specifically, he argued that the State "retaliated against him because he exercised a right protected by WIS. STATS. § 971.01(2)," charging him with additional felonies "only because [his] motion to dismiss was not withdrawn." Cameron further argued that, under *State v. Kelty*, 2006 WI 101, ¶23, 294 Wis. 2d 62, 716 N.W.2d 886, his claim was not waived by his plea.

¶6     The circuit court denied Cameron's motion, concluding that he failed to prove either a presumption of vindictiveness or actual vindictiveness. It found, as a matter of fact, that "[a]t worst," from Cameron's perspective, the State did not file the additional charges in its original case because it "[did]n't want to file a second complaint, go through a second preliminary hearing on this case"; it filed the additional charges in the new case because it had to "jump through these hoops" anyway, not out of a desire to punish Cameron for exercising his rights. "At best, from the defense perspective," the court concluded that even if Cameron had established facts leading to a presumption of vindictiveness, "as long as there's probable cause to support the offenses charged, then there's no vindictiveness" as a matter of law. Cameron appeals, asserting that the court erred both in its clearly erroneous factual finding and its characterization of the law.

¶7     The circuit court did not reach the question of whether Cameron's plea relinquished his right to appeal based on an alleged vindictive prosecution, determining that the State waived that issue. This court, however, may affirm based "on a theory or on reasoning not presented to the [circuit] court," *State v. Amrine*, 157 Wis. 2d 778, 783, 460 N.W.2d 826 (Ct. App. 1990), and we conclude that Cameron did indeed give up his right to appeal the issue by entering a plea of no contest. We analyze this legal issue independently. *See Kelty*, 294 Wis. 2d 62, ¶¶13, 18.     Generally, a guilty plea—or a no contest plea—waives all

nonjurisdictional claims, including constitutional claims. *Id.*, ¶18. This is known as the guilty-plea-waiver rule.[2]

¶8 There is an exception to the rule established by *Blackledge v. Perry*, 417 U.S. 21 (1974), and its progeny, including *Kelty*—but we conclude that exception has no application here. In *Blackledge*, a defendant who appealed his conviction for a misdemeanor was then charged with a felony based on the same conduct underlying the misdemeanor for which he was originally tried and convicted. 417 U.S. at 23. Although he pleaded guilty to the felony, *id.*, the United States Supreme Court determined that he retained the right to appeal the felony conviction, holding that his "plea did not foreclose him from attacking his conviction" when "the right that he assert[ed] … is the right not to be haled into court at all upon the felony charge," a claim that "went to the very power of the State to bring the defendant into court," *id.* at 30-31. A year later, in *Menna v. New York*, 423 U.S. 61 (1975), the supreme court again held that a guilty plea did not bar a defendant's double jeopardy claim, explaining that "a plea of guilty to a charge does not waive a claim that *judged on its face* the charge is one which the State may not constitutionally prosecute." 423 U.S. at 62 n.2 (emphasis added).

¶9 A subsequent case, *United States v. Broce*, 488 U.S. 563, 575 (1989), made the United States Supreme Court's rule clear. The guilty-plea-waiver rule did not apply in *Blackledge* or *Menna* because "the determination that the second indictment could not go forward should have been made by the

---

[2] As has been pointed out multiple times, this rule does not necessarily implicate "waiver," the intentional giving up of a known right, so much as "forfeiture," the failure to timely assert a right; a better label would arguably be the "guilty-plea-forfeiture" rule. *See State v. Kelty*, 2006 WI 101, ¶18 n.11, 294 Wis. 2d 62, 716 N.W.2d 886.

presiding judge *at the time the plea was entered* on the basis of the *existing record*." (Emphasis added). In contrast, the defendants in Broce pleaded guilty to indictments that were constitutional on their face. *See id.* at 576. The guilty-plea-waiver rule applied to bar the claims brought on appeal, which required "further proceedings at which to expand the record with new evidence." *Id.* at 575-76.

¶10 This is the rule our state supreme court adopted in *Kelty* with respect to double jeopardy violations: "[I]f a court cannot determine, based on the record, whether there is a double jeopardy violation, a guilty plea will relinquish a defendant's opportunity to have her double jeopardy claim resolved on the merits." 294 Wis. 2d 62, ¶¶ 26-27. Like courts in other states, we conclude that this rationale extends to appeals following a plea of no contest or guilty based on claims of vindictive prosecution. *See, e.g.*, *People v. Taylor*, 478 N.E.2d 755, 757 (N.Y. 1985) (noting that an allegation of vindictive prosecution is one that may be forfeited by a guilty plea); *Foy v. State*, 515 P.3d 659, 663 (Alaska Ct. App. 2022) (affirming denial of postconviction relief where defendant "filed his application for post-conviction relief precisely so that he could try to supplement the record and litigate a prosecutorial vindictiveness claim that he failed to raise prior to his guilty plea"), *aff'd on reh'g*, No. A-13454, 2023 WL 3000819 (Alaska Ct. App. Apr. 18, 2023).

¶11 Cameron attempts to distinguish the federal holding in *Broce* from our supreme court's holding in *Kelty*, arguing that he can still meet the *Kelty* standard because "the violation of Cameron's due process is evident from the postconviction and appellate record on its face" and "[t]he *Kelty* court did not specifically hold that 'judged on its face' and 'judged on the record at the time the plea was entered' are synonymous." In view of *Kelty*'s full-throated endorsement of *Broce* as being "consistent with Wisconsin case law and properly balanc[ing]

6

the public's interest in efficient judicial administration with a defendant's … rights" and its explicit statement that "[w]hat [the court's adoption of the ***Broce*** rule] means is that a court will consider the merits of a defendant's … challenge *if* it can be resolved on the record as it existed at the time the defendant pled," we reject this argument. *See* ***Kelty***, 294 Wis. 2d 62, ¶¶ 27, 38. Cameron's claim of vindictive prosecution was forfeited by his no contest plea.

¶12 This leaves Cameron with an ineffective assistance of counsel claim as his only potential avenue to withdrawal of his plea and a new trial. *See* ***id.***, ¶43 ("A guilty plea waives constitutional trial rights, but does not waive … the Sixth Amendment right to counsel."). Indeed, in his postconviction motion, Cameron requested a ***Machner***[3] hearing if the circuit court deemed his claim barred by the guilty-plea-waiver rule. He renews that argument before this court, but he falls far short of his burden to show both the deficient performance and resulting prejudice to him necessary to merit granting a hearing on this issue. *See* ***Strickland v. Washington***, 466 U.S. 668, 687 (1984) (holding that serious errors by counsel and resulting prejudice are the two prongs necessary to show constitutionally ineffective assistance of counsel). Cameron's argument related to prejudice in his postconviction motion is totally conclusory, amounting to little more than the undeveloped, unsupported statement that counsel's "performance was prejudicial because there is a reasonable probability that there would have been a different outcome in this case if [a] motion [to dismiss the case prior to the plea] had been filed." If a postconviction "motion does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations," then it may be

---

[3] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

denied without a hearing. *State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432.

¶13     Finally, we note that even if Cameron had not given up his right to attack his conviction by entering a no contest plea, we could not determine that he was a victim of vindictive prosecution based on the Record before us; we would affirm the circuit court's denial of Cameron's postconviction motion on that ground as well.  Prosecutorial vindictiveness (and a violation of due process) occurs "when the state retaliates against a person 'for exercising a protected statutory or constitutional right.'"  *State v. Johnson*, 2000 WI 12, ¶20, 232 Wis. 2d 679, 605 N.W.2d 846 (quoting *United States v. Goodwin*, 457 U.S. 368, 372 (1982)).  We review the legal principles related to prosecutorial vindictiveness de novo while we review the circuit court's factual findings related to this issue for clear error.  *State v. Cameron*, 2012 WI App 93, ¶11, 344 Wis. 2d 101, 820 N.W.2d 433.

¶14     Vindictive prosecution can be proved by establishing either a presumption of vindictiveness—as in a case where a defendant successfully appeals a conviction and the government then brings more serious charges against him, *Goodwin*, 457 U.S. at 376—or actual vindictiveness.  Cameron points to no authority, and we are aware of none, recognizing a presumption of vindictiveness arising from early pretrial conduct.  *See, e.g.*, *United States v. Schwalb*, 83 F.3d 1039, 1040 (8th Cir. 1996) (per curiam) (holding there was no presumption of vindictiveness when the government responded to defendant's pretrial motion to dismiss by filing expanded charges in a superseding indictment).  Cameron instead focuses on the emails between his trial counsel and the prosecutor, including the latter's offer to not add additional charges if he would withdraw his motion to dismiss based on the State's failure to file a timely information, as "objective

evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," or of actual vindictiveness. *See Johnson*, 232 Wis. 2d 679, ¶17.

¶15 The State concedes that the circuit court erred in determining that, as a matter of law, there could be no vindictiveness so long as there was probable cause for the charges filed. Nor does the State argue that the court was correct in finding as a matter of fact that the conduct at issue was motivated by the State's desire to avoid having to "jump through the hoops" of filing an indictment and conducting a preliminary hearing twice. But the prosecutor attested, in her affidavit attached to the State's response to Cameron's postconviction motion, that she had been considering adding the additional charges of first-degree reckless endangerment even before learning of Cameron's motion to dismiss. The charges had been referred by law enforcement before the preliminary hearing in the original case. The emails upon which Cameron relies were part of pretrial negotiations that took place amidst discussions with the victims and further consideration of the facts and evidence. They were part of the normal back-and-forth between the State and the accused during the early stages of a prosecution— not evidence of vindictiveness. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("[I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer."). As the State persuasively argues, the Record shows that Cameron's motion to dismiss did little more than delay the inevitable; it did not motivate the State to punish him with additional charges.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9