**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 23, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2018AP2192-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2013CF1603

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

RODNEY JOSEPH LASS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  ELLEN R. BROSTROM and JEFFREY A. WAGNER, Judges. *Affirmed.*

Before Brash, P.J., Blanchard and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Rodney Lass appeals a judgment entered on jury verdicts convicting him of seven felonies and two misdemeanors, all as domestic abuse violations.  He also appeals the order denying his motion for postconviction relief.  A first trial ended in a mistrial and Lass was convicted at a retrial.  At the first trial he faced only misdemeanor charges for alleged conduct in 2012.  At the second trial he faced multiple felony charges for alleged conduct in 2012, but also in 2008 and 2009.  The same person was the alleged victim at both trials.  Lass argues that the circuit court erred in rejecting, without holding an evidentiary hearing, his postconviction motion for a new trial based on his claim of vindictive prosecution.  Specifically, Lass contends that he is entitled to a hearing to allow him to prove that the prosecutor brought the additional charges after the mistrial "to retaliate against" Lass for prevailing on the mistrial motion in the first trial, and that this violated his due process protection against vindictive prosecution. Separately, Lass argues that the circuit court:  erred in rejecting his request for a hearing on a postconviction motion alleging ineffective assistance of trial counsel at the second trial; denied him his constitutional right to self-representation by not allowing him to directly participate in sidebar conferences during the second trial; and relied on inaccurate information at sentencing.[1]  We reject each of Lass's arguments and accordingly affirm.

## BACKGROUND

¶2      Lass was originally charged in July 2012 with three misdemeanors (two counts of battery and one of disorderly conduct), each as a domestic abuse

---

[1]  Lass initially raised in this appeal a challenge to the reasonable-doubt jury instruction. But he has withdrawn this argument based on our supreme court's intervening decision in *State v. Trammell*, 2019 WI 59, 387 Wis. 2d 156, 928 N.W.2d 564.

offense. Caroline was identified as the victim of the offenses, which allegedly occurred on June 17, 2012, June 30, 2012, and July 2, 2012.[2] We refer to this as "the misdemeanor case," which included "the misdemeanor trial." The misdemeanor trial was held in December 2012, the Honorable Mary E. Triggiano presiding. It ended in a mistrial after Caroline testified about alleged other acts by Lass that the court considered to be "extremely prejudicial" to Lass.

¶3 Following the mistrial, the State moved to dismiss the case without prejudice, explaining that it would be filing a new case that included additional charges. The Honorable Stephanie G. Rothstein granted the motion to dismiss without prejudice.

¶4 In April 2013, the State filed a complaint to initiate what we will refer to as "the felony case," including "the felony trial." The felony case complaint had eleven counts, each charged as a crime of domestic abuse against Caroline, overlapping in part but not wholly with the alleged conduct charged in the misdemeanor case. The complaint organized the allegations into six chronological categories, which we now summarize with the essential allegations made in the complaint:

1. Count One: Strangulation and suffocation, contrary to WIS. STAT. § 940.235(1) (2017-18).[3] On September 14, 2008, Lass strangled Caroline to the point of unconsciousness.

2. Counts Two, Three: Aggravated battery, contrary to WIS. STAT. § 940.19(5); felony intimidation of a witness by use or threat of force, contrary to WIS. STAT. § 940.45(1). On July 17, 2009, Lass grabbed

---

[2] Caroline is the pseudonym that both parties use for the victim and we follow this usage.

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Caroline by her throat, "slammed her on the ground," and told her "you are going to be the death of me. You're going to send me back to prison." He stomped on her midsection twice, kicked her multiple times, and punched her arms, her body, and the side of her head as he threatened to kill her. This beating resulted in a laceration to her liver.

3. Count Four: Aggravated battery. On November 12, 2010, Lass strangled Caroline. When she tried to reach for a knife to defend herself, he grabbed the knife and stabbed her in her left hand, severing a tendon.

4. Count Five: Second degree sexual assault by use or threat of force. During the time period of late-July-early-August-2011, Lass pushed Caroline onto the edge of a bed, grabbed her, and forced penis-vagina intercourse without her consent, holding her down and slapping her face repeatedly.

5. Counts Six, Seven, Eight: Strangulation; felony intimidation of a victim; misdemeanor battery. On June 17, 2012, Lass was verbally abusive to Caroline and then "hit her body with his hip pushing her into a chest of drawers," then "hit her in the jaw with his fist, causing [her] pain without her consent, and [she] temporarily lost consciousness." When she pushed him, he "grabbed her by the neck and throat," strangling her while telling her, "I'm not going back to jail for you," and "my voice is the last thing you are going to hear on this Earth." She "gasped for air."

6. Counts Nine, Ten, Eleven: Strangulation; felony intimidation of a victim; misdemeanor battery. During the course of a week around June 27, 2012, Lass and Caroline "fought" and this resulted in visible injuries to her. After this, Lass looked at contents of her cell phone and became "enraged" when he found photos of her visible injuries, which she had transmitted to her mother. Caroline told Lass that she was done with their relationship. He "grabbed her by her neck and throat, and pushed her up against the wall." He "held her by the throat/neck with his left hand and punched her with his right fist in the left side of her face, causing significant pain, bruising and swelling." She could not breathe and gasped for air. After he released her and she slumped to the floor, he kicked her repeatedly in the stomach and ribcage. He stomped on her. When she tried to escape, he grabbed her by the hair and punched her in the jaw. Thereafter, he threw her into a wall, hit her in the throat, and kicked her.

4

¶5     The Honorable Ellen R. Brostrom presided at the felony trial in December 2015. At a pretrial hearing the circuit court rejected Lass's motion to dismiss based in part on a claim of vindictive prosecution, as discussed in more detail in the Discussion section below.

¶6     Lass represented himself at trial, with the assistance of standby counsel.[4] A total of eighteen witnesses testified during the nine-day trial, including Lass. The jury found him guilty on seven felonies and two misdemeanors and acquitted on one charged felony.

¶7     The circuit court sentenced Lass to consecutive terms on the felonies totaling forty years of confinement, followed by fifteen years of extended supervision, and consecutive nine-month sentences on the misdemeanors.

¶8     Lass filed a postconviction motion containing multiple arguments, discussed individually below, which the circuit court denied without a hearing. Lass appeals.

## DISCUSSION

¶9     In his first two arguments, Lass contends that his postconviction motion alleged facts sufficient to justify an evidentiary hearing on the respective issues.

¶10    If a postconviction motion fails to "raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record

---

[4] At a pretrial hearing on November 3, 2015, the circuit court found Lass competent to represent himself and granted his request to do so, with assistance from standby counsel.

conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. "We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard." *Id.* "A circuit court properly exercises its discretion when it has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." *State v. Bentley*, 201 Wis. 2d 303, 318, 548 N.W.2d 50 (1996). "When reviewing a [circuit] court's exercise of discretion, we are permitted to search the record for reasons to sustain such a determination." *State v. Sulla*, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659.

## I. VINDICTIVE PROSECUTION

¶11 Lass argues that his postconviction motion entitled him to an evidentiary hearing at which he would show that the prosecution filed the additional charges in the felony case "to retaliate against him for his successful mistrial motion in the misdemeanor case." The State argues that the record conclusively demonstrates that Lass is not entitled to relief and, more specifically, that the postconviction motion failed to provide a reason to revisit the decision that the circuit court made before the felony trial to reject the vindictive prosecution claim. We conclude that the postconviction motion "'does not raise facts sufficient to entitle the movant to relief[.]'" *See id.*, ¶23 (citation omitted).

### A. Legal Principles

¶12 Our supreme court has summarized the vindictive prosecution test as follows:

> In order to decide whether a prosecutor's decision to bring additional charges constituted prosecutorial

6

> vindictiveness in violation of the defendant's due process rights, we first must determine whether a realistic likelihood of vindictiveness exists; if indeed it does exist, then a rebuttable presumption of prosecutorial vindictiveness applies. If we conclude that no presumption of vindictiveness applies, we next must determine whether the defendant has established actual prosecutorial vindictiveness.
>
> The legal principles surrounding prosecutorial vindictiveness claims present questions of law that we review *de novo*. However, we review the [circuit] court's finding of fact regarding whether the defendant established actual vindictiveness under the clearly erroneous standard.

*State v. Johnson*, 2000 WI 12, ¶¶17-18, 232 Wis. 2d 679, 605 N.W.2d 846 (citations omitted).[5]

## B.    Additional Background

¶13    Shortly before the felony trial, Lass filed a motion to dismiss the felony case on two grounds, double jeopardy and vindictive prosecution. The vindictive prosecution claim was based on allegations of events at the misdemeanor trial that occurred after Caroline gave unfairly prejudicial testimony. Lass alleged that he refrained from moving for a mistrial at that point, "after the

---

[5] The parties appear to disagree on an issue that we need not resolve. The disagreement is about whether a presumption of vindictiveness can be found in the mistrial circumstances here, which are outside the one circumstance in which the parties agree it has been found under Wisconsin precedent: when the defendant successfully obtains a new trial on appeal and the prosecutor then increases the seriousness of the charges or adds charges. *See State v. Williams*, 2004 WI App 56, ¶44, 270 Wis. 2d 761, 677 N.W.2d 691 (noting that the Wisconsin appellate courts have found a presumption of prosecutorial vindictiveness "to exist in one case: *State v. Edwardsen*, 146 Wis. 2d 198, 203-04, 430 N.W.2d 604 (Ct. App. 1988)," and that *Edwardsen* and U.S. Supreme Court cases finding the presumption all involved this circumstance). Lass argues that the facts here are the functional equivalent of the circumstance in which a defendant prevails in an appeal and faces increased charges. However, we need not resolve this dispute because we assume without deciding that the presumption could apply when a defendant alleges that a prosecutor added new felony charges to retaliate against a defendant for a successful mistrial motion.

State threatened [his trial counsel that the prosecutor would] add felony charges if Lass requested, and was granted[,] a mistrial." Lass contended that, as the trial continued, Caroline gave additional objectionable testimony, Lass moved for a mistrial, and the court granted the motion. Thereafter, Lass argued, the prosecutor "penalized Lass for standing on his Constitutional and statutory rights to a fair trial by 'upping the ante' by charging the additional felony offenses based on preexisting facts which were known to the State prior to bringing the original misdemeanor counts" in the misdemeanor case.

¶14    The State noted that, at the time the felony case complaint was filed, the prosecutor represented to the court that it had received police referrals for additional felony charges. The State also pointed out that Lass had failed to provide an affidavit from his trial counsel about any alleged threat made to counsel.

¶15    At a pretrial hearing in the felony case, the prosecutor who filed the felony case complaint represented to the court that she learned about the additional, prior domestic violence history meriting additional charges from Caroline, and that this did not occur "until after we had informed [Caroline] that the [c]ourt granted the motion for mistrial." The circuit court did not resolve the vindictive prosecution issue at this hearing.

¶16    Lass then filed an affidavit by trial counsel in which counsel averred that, after Caroline made "several improper and prejudicial statements" during her testimony at the misdemeanor trial, he moved for a mistrial. Trial counsel further averred that the court held a conference in chambers, after which the prosecutor told trial counsel that if trial counsel made a second mistrial motion, "and it was granted, she would file felony charges against Mr. Lass," and that this is what

happened. Trial counsel further averred that he took the prosecutor's statement to him at the misdemeanor trial predicting felony charges as a "threat that I should not zealously represent Mr. Lass in his trial, and that the State [should] be allowed to either secure a conviction through improper means or [Lass would] face dire consequences."[6]

¶17 At a subsequent pretrial motion hearing, the court rejected the vindictive prosecution claim. The prosecutor represented at this hearing that, in the same month as the misdemeanor trial, "either before, during, or after the misdemeanor trial," the prosecutor learned from Caroline about a "history of domestic violence" by Lass that extended beyond the conduct charged in the misdemeanor case. The prosecutor said that when Caroline told her about this history the prosecutor had not previously been aware of the existence of police reports reflecting Caroline's statements about the earlier incidents. The prosecutor said that she then researched the statute of limitations and discovered police reports reflecting Caroline's statements, and decided to file the complaint in the felony case.

---

[6] Trial counsel also averred that the prosecutor revealed what Lass now argues were "transparently personal motives" to retaliate against Lass for his successful mistrial motion by saying the following to him—presumably off the record since no record cite is provided—at the time of the March 4, 2013 status conference at which the misdemeanor case was dismissed:

> [A]lthough [the prosecutor's] assignment within the Office of the District Attorney [was] changing, she was not going to allow the case against Mr. Lass to be assigned to another ADA. [She] stated that even if she were to leave the District Attorney's Office and go into private practice, she would return under the District Attorney's pro bono program to personally see to the prosecution of Mr. Lass.

¶18 The court credited the prosecutor's account that, at around the time of the misdemeanor trial, the prosecutor learned additional information that reflected a deeper and broader history of domestic violence between Lass and Caroline that the prosecution had not been aware of before. At the same time, the court also appeared to accept as true trial counsel's account that the prosecutor had told trial counsel that, if a mistrial motion were made and granted, the State would file more serious charges. The court did not view this as a threat, but instead only as the prosecutor's frank explanation of where the case was headed in the event of a mistrial. The court stated:

> I think that it's true [that the prosecutor] informed [trial counsel] that things were evolving rapidly. She has a duty of candor, frankly, to the [c]ourt and really to a [d]efendant through his counsel to let them know pertinent information. The timing may have been unfortunate and may have caused [Lass] to infer that somehow the additional charges were designed to punish [Lass] or dissuade [Lass] from exercising a constitutional right, but I am convinced by the information submitted by the State that that is not the case.

## C. Postconviction Motion

¶19 In a postconviction motion, Lass contended that "[w]hether the [S]tate engaged in vindictive prosecution requires the court to conduct an evidentiary hearing at which the prosecutor must explain her reasoning for issuing the charges she did." This was so, Lass argued, because in rejecting the vindictive prosecution motion before the felony trial, the circuit court had "conducted no such hearing, and, therefore, it is necessary to conduct the hearing as a postconviction motion." More specifically, Lass argued that "[a]n evidentiary record must be made concerning (1) when and how the [assistant] district attorney became aware of the information that led to the additional counts following the mistrial; and, (2) … the claims of Lass's trial counsel[.]"

¶20 The Honorable Jeffrey A. Wagner determined that there was no need for an evidentiary hearing on the vindictive prosecution claim because Lass in his postconviction motion had pointed to "nothing new" to support the claim that had not already been properly rejected by the circuit court in ruling on the issue before the felony trial.

### D. Analysis

¶21 We conclude that Lass's postconviction motion fails to allege facts that, if adduced at an evidentiary hearing, would entitle him to relief, either based on proof of a realistic likelihood of prosecutorial vindictiveness or of actual vindictiveness.

¶22 Lass does not, because he cannot, dispute the general proposition that a presumption of vindictive prosecution typically does not arise when a prosecutor adds charges in a criminal case, in advance of trial, after discovering new information that supports additional charges. *See United States v. Goodwin*, 457 U.S. 368, 381 (1982) (at the pretrial stage, "the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance"); *State v. Williams*, 2004 WI App 56, ¶46, 270 Wis. 2d 761, 677 N.W.2d 691 (pertinent to vindictive prosecution analysis that charging prosecutor "had new evidence available to him" that an earlier prosecutor had not). Lass argues that, even though a prosecutor may generally file additional charges based on newly obtained information, the additional charges filed here "permit an inference that the prosecutor acted vindictively," because trial counsel "recounted a threat made by the prosecutor that if [counsel] made another motion for a mistrial, and the motion were granted, the [S]tate would respond with additional

felony counts," and then "did exactly that." However, Lass's postconviction motion failed to allege the existence of evidence that the prosecutor did *not* discover additional evidence around the time of the misdemeanor trial, and the statement allegedly made by the prosecutor, if made, was not on its face a threat.

¶23 Notably, the affidavit of trial counsel does not purport to quote the prosecutor, nor to describe particular actions of the prosecutor, conveying any message to trial counsel other than the simple prediction that a mistrial would lead to the filing of more serious charges. Thus, if it were proven that the prosecutor told trial counsel that she would be filing felony charges in the event of a mistrial, without more, it can be reasonably inferred that the prosecutor was doing so for the proper reasons noted by the circuit court. This is true even when the prosecutor's alleged statement about adding charges following a mistrial is put in the context of her other alleged comment about being committed to prosecuting the case. At most this comment would render Lass's desired inference of prosecutorial misconduct more reasonable, but without rendering the inference of proper conduct unreasonable. And, if Lass means to suggest that a hearing is necessary merely because the prosecutor could be impeached with the commitment-to-personally-prosecute comment, this misunderstands the standards necessary to trigger a postconviction evidentiary hearing. They are not fishing expeditions.[7]

---

[7] For the first time in his reply brief, Lass purports to raise another area of potential impeachment, but fails to support an argument. Lass quotes from a pretrial hearing transcript in the felony case, in which the prosecutor informed the circuit court that some of Lass's earlier alleged abusive conduct (from 2008) had been reported to police but had not been charged by the district attorney's office. Lass fails even to attempt to explain how this transcript passage could be used to undermine any other statement the prosecutor made.

12

¶24 Lass argues that one cannot reconcile the prosecutor's version of events, which the circuit court credited, with the allegations of Lass's postconviction motion, creating an issue of fact that required an evidentiary hearing to address. However, setting to the side that this argument strays beyond the allegations of his motion, there is nothing inconsistent between the versions of pertinent events given by the prosecutor and trial counsel, and neither of them claimed to have evidence that the other was not telling the truth.

¶25 It is true, as Lass points out, that some felony charges in the felony case arose out of Lass's conduct in June 2012 that was originally charged at the misdemeanor level. However, Lass fails to develop an argument that the conduct at issue could not reasonably be charged at the felony level. More generally, he fails to explain what evidence, alleged in his postconviction motion, he would introduce at a hearing to cast these particular charging decisions in a vindictive light. In addition, it is consistent with the prosecutor's version of events—that the prosecutor learned of the full range and seriousness of Lass's victimization of Caroline only around the time of the misdemeanor trial—that Caroline's additional disclosures might have reasonably caused the prosecutor to see the June 2012 events in a more serious light.

¶26 This leaves trial counsel's averment that he took the prosecutor's statement about filing felony charges as a "threat that I should not zealously represent Mr. Lass in his trial, and that the State [should] be allowed to either secure a conviction through improper means or [Lass would] face dire consequences." The problem is that trial counsel's subjective "threat" reaction is an unexplained leap from the other factual allegations in the affidavit. That is, the other averments in his affidavit provide us with no reason to think that Lass could present evidence at a hearing to support the conclusion that the "threat" reaction

13

would have been a reasonable or expected reaction under the circumstances he described. And, for these same reasons, if trial counsel testified to this subjective reaction at a hearing, it would add nothing to the analysis.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

¶27    Lass argues that his postconviction motion entitled him to an evidentiary hearing at which he would have had the opportunity to show that trial counsel was ineffective for failing to move to suppress, on Fifth Amendment grounds, journal entries that Lass had been required to keep as part of his probation supervision in another case. However, putting aside the deficiency prong of the ineffective assistance test, he presents an undeveloped argument on the prejudice prong. *See State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (to demonstrate ineffective assistance, defendant must establish both that counsel's performance was deficient and that deficient performance was prejudicial). Lass's argument regarding prejudice consists entirely of the following assertions:

> Counsel's error was prejudicial because the evidence from the journals was, in effect, the centerpiece of the [S]tate's case. These were admissions, attributable to Lass, that on other occasions he committed felonious domestic abuse on Caroline; and, further, he made reference to his days as "a [drug] dealer." Certainly, the erroneous admission of this evidence is sufficient to undermine confidence in the outcome of the case.

There is no attempt in these brief assertions to explain the prejudicial significance of specific journal entries, considered in the context of all evidence and argument

that was presented at trial.[8] His assertion—"in effect, the centerpiece"—is merely a vague conclusion. We reject this argument as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (stating that to address the appellant's arguments we would first have to develop them, and declining to address them because "[w]e cannot serve as both advocate and judge"). Further, after the State reasonably takes the position that we should reject any prejudice argument based on lack of development, Lass fails to provide any reply on the point whatsoever, conceding the point. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in response brief may be taken as concession).

### III. SELF-REPRESENTATION

¶28 Lass argues that we must vacate his convictions and order a new trial because the circuit court denied him his constitutional right to represent himself by not permitting him to directly participate in sidebar conferences at trial. The State argues, in part, that Lass forfeited this argument by failing to raise it with sufficient specificity in the circuit court. We agree with the State's forfeiture argument.

#### A. Legal Principles

¶29 "'[F]orfeiture is the failure to make the timely assertion of a right[.]'" *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612

---

[8] In the Statement of the Case section of his principal brief, Lass provides what he calls a "mere sampling of the sort of evidence that was contained in the journal," not "a complete presentation."

15

(quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "To preserve an alleged error for review, 'trial counsel or the party must object in a timely fashion with specificity to allow the court and counsel to review the objection and correct any potential error.'" *State v. Torkelson*, 2007 WI App 272, ¶25, 306 Wis. 2d 673, 743 N.W.2d 511 (quoting *State v. Nielsen*, 2001 WI App 192, ¶11, 247 Wis. 2d 466, 634 N.W.2d 325).

¶30   Lass does not dispute that, under these circumstances, the State may at least attempt to evoke the forfeiture rule discussed in *Ndina*. That is, Lass does not develop an argument that he can pursue the right to self-representation issue even if he failed to make a sufficiently specific objection in the circuit court.

### B.   Additional Background

¶31   During a pretrial hearing in the felony case, before the circuit court permitted Lass to represent himself with assistance from standby counsel, Lass's counsel told the court that Lass was requesting "that he be present for any side bar conferences." The court responded that, "[l]ogistically, it's not going to be possible" to allow the in-custody Lass to be personally present for sidebars. However, the court explained that the court's practice is to hold sidebars with the attorneys,

> and then at the next break when the jury goes out, I put everything on the record. I ask the lawyers to confirm whatever [was said] and then obviously, at that time if … Mr. Lass has an issue with it he can let you know and the [c]ourt can respond.

There was no objection to this proposed approach of keeping Lass informed in this manner, given logistical limitations.

¶32    During voir dire, after Lass was representing himself with assistance from standby counsel, the court asked the attorneys and Lass how they would "propose we handle sidebars?"  Standby counsel responded,

> I do need Mr. Lass to be a part of the sidebars. Hopefully there won't be a whole lot of them.  I know it's a bit of a pain to get the jury out [so that Lass could participate] and bring them back in.  I don't know, Judge.

Lass said, "I understand there's procedures and such, but if I would have paid my bail[,] I would walk in and out of here no problem, … I wouldn't be restrained to the floor[.]"  Lass argued that courtroom security was sufficiently tight that the court should allow him, even though he was in custody, to participate in sidebar conferences—otherwise "poor people get … chained down and people with money don't."  The court responded that the

> reality is that the policy of the sheriff's department for in-custody defendants is as follows.  There have been incidents in the past [with] in-custody defendants who were not properly restrained.  One actually got a hold of the sheriff's gun[.]
>
> ….
>
> … I mean, I'm not saying you would do that but do you understand why there's a policy and they apply it evenly?
>
> So I guess what I would propose is that we try to do as much just on the record in front of the jury and, you know, if … we need to, I'll just have to send the jury out.

Neither Lass nor standby counsel objected to this.  Lass asked if "they still have the stun belt with the 500,000 volts or the thing they put on the person[?]"  The court replied that it did not know, but "I am not going to change the policy."  Lass responded, "Okay."

¶33    The State does not dispute Lass's contention that the court held twenty-one side bar conferences during trial, and the court did not excuse the jury for any of them.  Lass does not dispute that the court would summarize what had been said during the side bars during breaks.

¶34    After the court gave one such sidebar summary in open court, outside the presence of the jury, Lass told the court

> I do understand [that] because my leg is … shackled I can't be part of side bars and I have the utmost confidence in [the standby attorney].  My only fear is the jury has to be [wondering] why isn't he getting up[?]  You know, it kind of bothers me.  It's worrisome to me.

The court replied that it believed that jurors "would understand that you don't put a defendant right next to a judge."  The court continued, "Nothing personal.  I could tell you the deputies wouldn't allow it under any circumstance."  Neither Lass nor standby counsel raised any objection based on Lass's right to self-representation.

### C.    Postconviction Motion

¶35    In the postconviction motion, Lass made no reference to sidebars or to his right to self-representation.

### D.    Analysis

¶36    Lass contends that the State's forfeiture argument "is based on the fact that Lass never uttered the talismanic phrase 'Sixth Amendment right to self-representation' as he was objecting to not being allowed to participate in sidebar conferences."  We disagree that the missing element was a talisman, and conclude that Lass failed to raise the argument with sufficient specificity in the circuit court.

¶37    Lass contends that it is sufficient to preserve an issue "to tell the court, and opposing counsel, *what* he objects to, and *why* he objects to it." (Emphasis in original.)   Using this formulation here, the "why" was entirely missing.  Indeed, the only time Lass provided a "why," was to tell the court that he was concerned that jurors would wonder why he was not joining the attorneys at sidebar.  The court addressed this concern by explaining the court's view that jurors were unlikely to wonder about that.  Lass mentioned the possibility of a stun belt, but he failed to give the court the opportunity to come up with an alternative strategy of the court's choice to address the issue.  To cite one obvious example, if that had been identified as the concern, the court might have elected to excuse the jury on some occasions, perhaps all occasions.

## IV.   SENTENCING BASED ON INACCURATE INFORMATION

¶38    Lass argues that he was sentenced based on inaccurate information, because the sentencing court was not aware that Caroline had been arrested shortly before the sentencing hearing on a charge of domestic abuse battery (although the State subsequently dismissed the charges).  We conclude that Lass fails to show that the court relied on inaccurate information.

¶39    "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1.  We review *de novo* whether a defendant has been denied this right.  *See id.*  The first element the defendant must establish is that there was inaccurate information before the sentencing court.  *Id.*, ¶2.  The second element is that the court actually relied on the inaccurate information.  *Id.*  If the defendant satisfies this two-prong test, the burden shifts to the State to establish that the error was harmless.  *Id.*, ¶3.

¶40     We reject at least one premise of Lass's argument that would be necessary to show that the sentencing court relied on inaccurate information. This is the premise that, if the sentencing court had been aware of Caroline's arrest, that would have been a mitigating fact, because Caroline would have been revealed to have the character of a physical aggressor.

¶41     The State's position, to which Lass fails to reply, is concise and persuasive. The State contends that the arrest is completely consistent with legitimate considerations that the sentencing court emphasized. The sentencing court expressed the view that Lass had targeted Caroline for the serious crimes for which he had been convicted due to her vulnerabilities, including conduct of hers that might violate the law or that might appear to invite violations of the law. Further, the State points out, at sentencing the court and Caroline discussed relationships she had with men other than Lass who had also targeted her because of her vulnerabilities, and the new arrest has the appearance of yet another rocky relationship with another abusive man. In sum, the court's assessment of Caroline's vulnerabilities made Lass more, not less, blameworthy for victimizing her many times over a span of years. And, Lass fails to develop an argument that her arrest would not have served only to confirm her vulnerability.[9]

---

[9] In connection with the issue of Caroline's arrest, Lass alludes to the State's obligations to disclose evidence favorable to a defendant. But when the State points out that Lass fails to present any failure-to-disclose-evidence issue as part of a developed argument, Lass does not reply, conceding the issue. Further, for the reasons stated in the text, Lass fails to show that Caroline's arrest counted as evidence favorable to Lass.

**CONCLUSION**

¶42    For all these reasons, we affirm the judgment of conviction and the order denying Lass's motion for postconviction relief.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.